[No. D037142. Fourth Dist., Div. One. Aug. 5, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
WENDY RENEE VERLINDE, Defendant and Appellant.

**COUNSEL**

Susan K. Keiser, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Pamela A. Ratner Sobeck, Steven T. Oetting, Frederick B. Clark and Teresa Torreblanca, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**McCONNELL, J.**—A jury convicted Wendy Renee Verlinde of gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5, subd. (a)), vehicular manslaughter without gross negligence (Pen. Code, § 192, subd. (c)(3)), driving under the influence and causing injury and causing injury to two victims (Veh. Code, § 23153, subd. (a), & former § 23182), and driving with a blood-alcohol content over .08 and causing injury to two victims (Veh. Code, § 23153, subd. (b) & former § 23182). The jury also found Verlinde personally inflicted great bodily injury on two victims within the meaning of Penal Code section 12022.7, subdivision (a) in connection with all of the counts.

The trial court sentenced Verlinde to four years in prison for the gross vehicular manslaughter count and imposed two consecutive three-year terms for the personal infliction of great bodily injury allegations. The court stayed the sentence on the other counts and allegations pursuant to Penal Code section 654.[1]

Verlinde appeals, contending (1) there was insufficient evidence to support her conviction, (2) the trial court committed reversible error by failing to instruct on accomplice testimony, (3) the refusal to instruct on the defense of necessity was error, (4) the lesser included offense of vehicular manslaughter while intoxicated must be reversed, and (5) the great bodily injury enhancements should not have been imposed.

---

[1] All statutory references are to the Penal Code unless otherwise specified.

FACTS

On May 29, 1999, Verlinde, 19, drove to Tijuana, Mexico in her Toyota pickup truck, accompanied by Marisa Parisi and Xochitl Cruz. Verlinde parked the truck on the United States side of the border, and she and her companions walked across the border.

Also in Tijuana that evening were Mark Vessells and Diego Perez, who had taken a bus from Los Angeles and were planning on returning to Los Angeles by bus after spending a night of drinking in Tijuana. Vessells and Perez met Verlinde, Parisi, and Cruz at a nightclub on Revolution Avenue, where they sat at the same table and conversed for about an hour. Between 5:00 a.m. and 6:00 a.m. on May 30, the five of them shared a taxicab ride to the border crossing.

The women offered Vessells and Perez a ride to the Los Angeles area. Vessells accepted the offer, but Perez declined. Perez believed no one in the group was sober enough to drive. Perez said he would use his round-trip ticket and take the bus back to Los Angeles as previously planned. Perez stayed on the Mexican side of the border to catch the bus while Vessells crossed the border with the three women.

After they reached Verlinde's pickup truck, Vessells started to get in the passenger side, but Verlinde told him to enter the driver's side instead. She told him he would not fit in the passenger side. Vessells entered the truck by the driver's side door and was "squashed" between the driver's side door and Verlinde's left side. Cruz was sitting immediately to Verlinde's right, and Parisi was sitting next to the passenger side door.

No one had discussed who was going to drive, but Vessells testified he did not believe he was going to drive. Vessells had been drinking since 10:30 p.m. and he had a "slight buzz." He was also tired because he had not slept. Verlinde drove out of the parking lot but then said she did not feel like driving. Vessells said: "I'll drive," and grabbed the steering wheel. However, he did not operate the stick shift or the pedals; Verlinde did.

After getting on Interstate 5, Vessells indicated he was not able to continue driving and Verlinde took over the steering wheel. Vessells testified he fell asleep within minutes. The next thing he remembered was waking up in the hospital four to five days later.

Shortly before 6:40 a.m., Joseph Mott parked his flatbed truck in the emergency lane of northbound Interstate 5 in the Encinitas area after observing a car roll off the freeway and down a slope. Mott exited his truck and

was assisting the occupants of the rolled car when he heard a "smack" and a screech as Verlinde's Toyota pickup truck hit the back of his flatbed truck. Mott turned and saw the Toyota pickup truck travel around the side of his truck; Mott also saw three people ejected from the pickup truck. Mott observed three injured women on the roadside. Two of the women were conscious.

At approximately 6:40 a.m., Danielle Sandoval was driving northbound on Interstate 5 near Encinitas when she noticed Verlinde's Toyota pickup truck being driven erratically. Sandoval followed the pickup truck for about five to 10 minutes and then decided to pass it. As Sandoval passed the truck on the left, she looked over and saw what she believed was a male in the driver's seat slumped over with his face in the neck of the person to his right. She believed the man was asleep. The woman next to him was steering the vehicle, Sandoval testified. Sandoval identified Verlinde as the woman who had her hands on the steering wheel. Sandoval said Verlinde appeared to be falling asleep as well because her head nodded several times and her eyes were closing.

After passing the Toyota pickup truck, Sandoval looked in her rearview mirror and saw the truck veer off to the right. She saw a cloud of dust and two or three people ejected from the truck. Sandoval pulled her car to the side of the road, woke up one of her passengers and instructed the passenger to call 911. Sandoval testified she walked over to Verlinde and instructed her not to move.[2] Sandoval said she began to get sick and left the scene without giving her name to anyone. The California Highway Patrol (CHP) was able to trace Sandoval from the 911 call made on her mobile telephone.

Parisi, who was 19 years old, was pronounced dead at 7:48 a.m., about an hour after the collision. The cause of death was "blunt force trauma."

Cruz suffered multiple broken bones, contusions and a severe head injury. Cruz underwent nine or 10 surgeries. She had complete memory loss of the five to six years preceding the accident. At the time of the trial, Cruz was wearing a brace on her leg and testified she may have to wear the brace for the rest of her life.

Vessells suffered a head injury, ripped vocal cords, and lacerations. He had no memory of the collision when he awoke in the hospital four days

---

[2]Sandoval testified she never saw Mott, who was at the accident scene before she was. Mott testified he was by Verlinde's side immediately after the collision. There also was a conflict between Sandoval's testimony and Vessells's testimony. Vessells testified he knew Sandoval because she dated his friend. Sandoval denied knowing Vessells.

later. Vessells spent 30 days in the hospital, and underwent rehabilitation to learn how to walk and speak again.

Verlinde suffered lacerations and a moderate concussion. She was released from the hospital the day after the collision. When contacted at the hospital by CHP Officer Steven Turk, Verlinde said she and Vessells were driving and they had switched driving without stopping. Verlinde also said they were going to stop at a Denny's restaurant for coffee because all of them were too drunk to drive. Verlinde's blood-alcohol level at the time of the collision was .14 percent.

## DISCUSSION

### I. *Accomplice Status of Mark Vessells*

#### A. *General Legal Principles*

The law has long recognized that the testimony of accomplices is subject to the taint of improper motive. For example, in *People v. Coffey* (1911) 161 Cal. 433, 438 [119 P. 901], our Supreme Court explained: "[I]t was, of course, recognized that evidence of an accomplice, coming from a tainted source, the witness being . . . a man usually testifying in the hope of favor or the expectation of immunity, was not entitled to the same consideration as the evidence of a clean man, free from infamy. Hence, it soon became the practice of the common law judges, in the wide latitude allowed to them in the instruction of their juries, to advise the latter that the testimony of an accomplice . . . was to be viewed with care, caution, and suspicion." Consequently, a conviction cannot stand on the uncorroborated testimony of an accomplice (see § 1111), and a jury must be instructed to view with caution the testimony of an accomplice presented by the prosecution. (See *People v. Williams* (1997) 16 Cal.4th 635 [66 Cal.Rptr.2d 573, 941 P.2d 752]; CALJIC No. 3.18 (1999 rev.) (6th ed. 1996).) There is a sua sponte duty to give accomplice testimony instructions. (*People v. Gordon* (1973) 10 Cal.3d 460, 468-469 [110 Cal.Rptr. 906, 516 P.2d 298].)

These requirements of accomplice testimony are central to Verlinde's appeal. Verlinde, who argues witness Vessells was an accomplice as a matter of law, relies on the corroboration prerequisite as the basis for her attack on the sufficiency of the evidence. She also assigns error for not giving instructions on accomplices, including the corroboration requirement and the

cautionary instruction on accomplice testimony.[3] Thus, Vessells's status as an accomplice is a crucial issue for our review.

■ Accomplice liability is "'derivative,'" resulting from an act by the perpetrator to which the accomplice contributed. (*People v. Prettyman* (1996) 14 Cal.4th 248, 259 [58 Cal.Rptr.2d 827, 926 P.2d 1013].) Put another way, "'[a]n accomplice' is one who knowingly, voluntarily, and with common intent with the principal offender unites in the commission of the crime." (*People v. Jones* (1967) 254 Cal.App.2d 200, 213 [62 Cal.Rptr. 304].) ■ For purposes of determining whether accomplice witness instructions are necessary, an accomplice is defined as "one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given." (§ 1111; see also CALJIC No. 3.10.)

■ "In order to be an accomplice, the witness must be chargeable with the crime as a principal (§ 31) and not merely as an accessory after the fact (§§ 32, 33)." (*People v. Sully* (1991) 53 Cal.3d 1195, 1227 [283 Cal.Rptr. 144, 812 P.2d 163].) Aiders and abettors are included in the category of principals. (§ 31.) An aider and abettor is one who aids, promotes, encourages or instigates a crime with knowledge of the unlawful purpose of the perpetrator *and* the intent to assist in the commission of the crime. (*People v. Beeman* (1984) 35 Cal.3d 547, 560 [199 Cal.Rptr. 60, 674 P.2d 1318].) Since aider and abettor liability is based on principles of vicarious liability, an aider and abettor is liable not only for the offense he intended to facilitate or encourage but also for "any reasonably foreseeable offense committed as a consequence by the perpetrator." (*People v. Croy* (1985) 41 Cal.3d 1, 12, fn. 5 [221 Cal.Rptr. 592, 710 P.2d 392].)

■ A witness's status as an accomplice "is a question for the jury if there is a genuine evidentiary dispute [on knowledge and intent] and if 'the jury could reasonably [find] from the evidence' that the witness is an accomplice." (*People v. Howard* (1992) 1 Cal.4th 1132, 1174 [5 Cal.Rptr.2d 268, 824 P.2d 1315], quoting *People v. Hoover* (1974) 12 Cal.3d 875, 880 [117 Cal.Rptr. 672, 528 P.2d 760].)[4] In such cases, the defendant is entitled to instructions on accomplice testimony, and the failure to instruct may be reversible error. (*People v. Fauber* (1992) 2 Cal.4th 792, 833-834 [9

---

[3]Additionally, Verlinde claims the enhancement for great bodily injury imposed for the injuries suffered by Vessells was improper because he was an accomplice. (See § 12022.7, subd. (a) ["A person who personally inflicts great bodily injury on any person other than an accomplice in the commission . . . of a felony shall . . . be punished by an additional term of three years . . . ."].) See discussion in part IV, *post*.

[4]See CALJIC No. 3.19: "You must determine whether the witness _____ was an accomplice as I have defined that term. [¶] The defendant has the burden of proving by a

Cal.Rptr.2d 24, 831 P.2d 249].) When the facts are not in dispute, the issue is a legal one to be determined by the trial court. (*People v. Daniels* (1991) 52 Cal.3d 815, 867 [277 Cal.Rptr. 122, 802 P.2d 906].) " 'Where such witness is an accomplice as a matter of law, the court should so charge. . . .[5] Conversely, where, as a matter of law, the witness is not an accomplice, the court does not err in refusing to charge that he is or in refusing to submit the issue to the jury.' " (*People v. Hoover, supra,* 12 Cal.3d at p. 880, quoting *People v. Jones* (1964) 228 Cal.App.2d 74, 94-95 [39 Cal.Rptr. 302].)

"Any issues of fact determinative of the witness's factual guilt of the offense must be submitted to the jury. Only when such facts are clear and undisputed may the court determine that the witness is or is not an accomplice as a matter of law." (*People v. Rodriguez* (1986) 42 Cal.3d 730, 759 [230 Cal.Rptr. 667, 726 P.2d 113].)

"Gross vehicular manslaughter while intoxicated is the unlawful killing of a human being without malice aforethought, in the driving of a vehicle, where the driving was in violation of Section 23140, 23152, or 23153 of the Vehicle Code, and the killing was either the proximate result of the commission of an unlawful act, not amounting to a felony, and with gross negligence, or the proximate result of the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence." (Pen. Code, § 191.5, subd. (a).)[6] ■ The elements of Penal Code section 191.5 are: (1) driving a vehicle while intoxicated; (2) when so driving, committing some unlawful act, such as a Vehicle Code offense with gross negligence, or committing with gross negligence an ordinarily lawful act which might produce death; and (3) as a proximate result of the unlawful act or the negligent act, another person was killed. (See CALJIC No. 8.93.) Gross negligence is the exercise of so slight a degree of care as to exhibit a conscious indifference or "I don't care" attitude concerning the ultimate consequences of one's conduct. (*People v. Bennett* (1991) 54 Cal.3d 1032, 1036-1038 [2 Cal.Rptr.2d 8, 819 P.2d 849].)

■ The elements of driving under the influence and causing injury are: (1) driving a vehicle while under the influence of an alcoholic beverage; (2) when so driving, committing some act which violates the law or fails to

---

preponderance of the evidence that _____ was an accomplice in the crime[s] charged against the defendant." An accomplice is defined in CALJIC No. 3.10.

[5]See CALJIC No. 3.16: "If the crime of _____ was committed by anyone, the witness _____ was an accomplice as a matter of law and [his] [her] testimony is subject to the rule requiring corroboration."

[6]Vehicle Code section 23140 makes it unlawful for a person under 21 years of age to drive a vehicle with a blood-alcohol content of .05 or more.

perform some duty required by law; and (3) as a proximate result of such violation of law or failure to perform a duty, another person was injured. (*People v. Minor* (1994) 28 Cal.App.4th 431, 437-438 [33 Cal.Rptr.2d 641]; Veh. Code, § 23153, subd. (a); CALJIC No. 12.60.)

Ordinarily, accomplice liability under a coperpetrator theory or an aider and abettor theory is not associated with the crimes of gross vehicular manslaughter and felony drunk driving because of the individual nature of the act and mental state involved. However, this case presents an unusual factual situation with shared driving by two intoxicated individuals. As we shall explain, we find accomplice liability for these crimes is possible under this factual pattern.

B. *Was Vessells an Accomplice as a* <u>Matter of Law</u> *to Gross Vehicular Manslaughter While Intoxicated and/or Felony Drunk Driving?*

■ Verlinde asserts Vessells was an accomplice as a matter of law to gross vehicular manslaughter while intoxicated and felony drunk driving. She is mistaken. We cannot say as a matter of law that Vessells was an accomplice to either crime.

The evidence is undisputed that an intoxicated Vessells handled the steering wheel and an intoxicated Verlinde operated the pedals while driving the vehicle at the beginning of the journey back to the Los Angeles area. This evidence conclusively established that at the start of the trip both of them were driving the vehicle (see *In re Queen T.* (1993) 14 Cal.App.4th 1143, 1144, 1145 [17 Cal.Rptr.2d 922]) while under the influence of alcohol (Veh. Code, § 23152, subd. (a)), which is a misdemeanor. Therefore, as a matter of law, Vessells was an accomplice to misdemeanor drunk driving as a coperpetrator.

However, the evidence as to what Vessells was doing when the vehicle was in the Encinitas area is susceptible to varying inferences. Sandoval testified that Vessells appeared to be asleep as she passed the Toyota pickup truck, and Vessells testified he promptly fell asleep after he stopped driving as soon as the vehicle was on Interstate 5 near the border. To the contrary, Verlinde told the CHP officer that both she and Vessells were driving, and the officer did not pin down the time element. Because the evidence was ambiguous as to when Vessells was asleep, we cannot categorically say Vessells was still driving the vehicle when the homicide took place or immediately before then. Consequently, Vessells did not as a matter of law have accomplice liability as a coperpetrator of gross vehicular manslaughter while intoxicated and/or felony drunk driving.

Nor can we say as a matter of law that Vessells was an accomplice under an aiding and abetting theory. Mere presence at the scene of the crime and failure to take steps to prevent the crime do not establish aiding and abetting liability. (*Pinell v. Superior Court* (1965) 232 Cal.App.2d 284, 287 [42 Cal.Rptr. 676].) To establish criminal liability on an aiding and abetting theory, the defendant must have "act[ed] with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense." (*People v. Beeman, supra*, 35 Cal.3d at p. 560.) There was conflicting evidence on whether Vessells had the requisite knowledge and intent. Vessells's testimony that he did not believe any of the three young women were too drunk to drive was contradicted by other evidence, including Perez's testimony that everyone in the group was obviously too drunk to drive. The conflicting evidence simply does not compel the conclusion that Vessells knew he was handing over control of the vehicle to a person under the influence. Thus, the evidence was not so clear and undisputed that a single inference could be drawn that Vessells was an aider and abettor to the charged offenses. A court can decide as a matter of law whether a witness is an accomplice *only* when the facts regarding the witness's criminal culpability are clear and undisputed. (*People v. Rodriguez, supra*, 42 Cal.3d at p.759.)[7]

Verlinde argues that Vessells is an accomplice as a matter of law because he admitted his participation in the commission of a crime. (See *People v. Davis* (1954) 43 Cal.2d 661, 672-673 [276 P.2d 801].) The problem with this argument is that Vessells did not admit he participated in the crime of gross vehicular manslaughter while intoxicated and felony drunk driving. Although Vessells's testimony was tantamount to an admission that he unlawfully drove while under the influence of alcohol (Veh. Code, § 23152, subd. (a)), Verlinde was not charged with misdemeanor drunk driving. For purposes of the accomplice witness instructions, an accomplice is one who is liable for the same criminal charges as the defendant. (Pen. Code, § 1111.) Accordingly, we similarly reject Verlinde's suggestion that the trial court's appointment of counsel for Vessells highlights his status as an accomplice.

In short, Vessells was not, as a matter of law, an accomplice of gross vehicular manslaughter or felony drunk driving. The court did not err in failing to instruct the jury that Vessells was an accomplice as a matter of law. An instruction that a witness is an accomplice as a matter of law "could be given only if undisputed evidence established the complicity." (*People v. Davis, supra*, 43 Cal.2d 661, 672.)

---

[7]Because of the conflicting evidence on key issues, we also reject the Attorney General's argument that Vessells was *not* an accomplice as a matter of law.

C. *Should the Jury Have Been Asked to Determine Whether Vessells Was an Accomplice?*

██ However, the record does contain evidence from which a reasonable jury could have concluded that Vessells was an accomplice to the charged offenses within the meaning of section 1111.

The charged crimes of gross vehicular manslaughter and felony drunk driving were continuous crimes that were set in motion when this group of inebriated individuals squeezed into the cab of Verlinde's pickup truck and Verlinde started driving. When Verlinde announced she did not feel like driving, Vessells volunteered: "I'll drive." Then, when he no longer wanted to drive, Vessells relinquished the steering wheel over to Verlinde.

One reasonable inference to draw from this scenario was that Vessells was encouraging an intoxicated Verlinde to drive, which would support aider and abettor liability of the misdemeanor crime of driving under the influence. ██ Aiders and abettors are liable for not only the offense they intended to facilitate or encourage but also for "any reasonably foreseeable offense committed as a consequence by the perpetrator." (*People v. Croy, supra,* 41 Cal.3d at p. 12, fn. 5.) ██ Was it reasonably foreseeable that injuries and/or death would result when an intoxicated driver is driving on a freeway under circumstances that include four people, including the driver, being squeezed into the cab of a small pickup truck? Also, the timing of when Vessells relinquished the steering wheel and fell asleep presented a jury question. There is no doubt that Vessells and Verlinde acted in concert in driving the vehicle, but it is unclear at what point Vessells stopped driving and fell asleep. Furthermore, when Vessells fell asleep, did he abandon his role in the continuing crime? (See *People v. Horton* (1995) 11 Cal.4th 1068, 1115-1116 [47 Cal.Rptr.2d 516, 906 P.2d 478] [readiness of defendant's companion to drive him to drug dealer's apartment to commit robbery did not make him accomplice where he never did so].) These questions should have been left to the jury to decide under proper instructions.

On this record, Vessells was a potential accomplice of gross vehicular manslaughter and felony drunk driving. Vessells's actions were subject to a variety of interpretations; whether these actions amounted to aiding and abetting the charged crimes was a matter of factual dispute. Accordingly, whether Vessells was an accomplice presented factual questions for the jury and could not be decided as matter of law. The trial court erred in not instructing the jury to (a) determine the question of Vessells's status as an accomplice, and (b) if the jury found Vessells to be an accomplice his

testimony (1) should be viewed with care and caution (CALJIC No. 3.18 (1999 rev.) (6th ed. 1996) and (2) would require corroboration to support a conviction (CALJIC No. 3.11). The question remains whether this instructional error was prejudicial.

If there is ample evidence corroborating an accomplice's testimony, error in failing to give accomplice instructions is harmless. The corroborative evidence " ' "must tend to implicate the defendant and therefore must relate to some act or fact which is an element of the crime but it is not necessary that the corroborative evidence be sufficient in itself to establish every element of the offense charged." [Citation.]' [Citation.]" (*People v. Zapien* (1993) 4 Cal.4th 929, 982 [17 Cal.Rptr.2d 122, 846 P.2d 704].) The evidence necessary to corroborate accomplice testimony need only be slight, such that it would be entitled to little consideration if standing alone. (*People v. Sanders* (1995) 11 Cal.4th 475, 534-535 [46 Cal.Rptr.2d 751, 905 P.2d 420].) It is enough that the corroborative evidence tends to connect defendant with the crime in a way that may reasonably satisfy a jury that the accomplice is telling the truth. (*Id.* at p. 535.) Corroborative evidence may be entirely circumstantial. (*People v. Hayes* (1999) 21 Cal.4th 1211, 1271 [91 Cal.Rptr.2d 211, 989 P.2d 645].)

Here, there was more than sufficient corroborative evidence to render the instructional errors harmless. Sandoval's testimony corroborated Vessells's testimony that he, the sole male in the crowded cab of the Toyota pickup truck, was asleep and he was sitting in the driver's seat while the woman next to him was steering the truck right before the fatal collision. Additionally, Verlinde told the CHP officer that she and Vessells had "switched" drivers without stopping and Verlinde demonstrated how she held her arms in the nine o'clock and three o'clock position to control the steering wheel. A defendant's own testimony may be sufficient corroborative testimony. (*People v. Ruscoe* (1976) 54 Cal.App.3d 1005, 1011-1013 [127 Cal.Rptr. 6].) It was stipulated that Verlinde's blood-alcohol level was .14 at the time of the collision, and it was undisputed that Parisi was killed, and Cruz and Vessells were seriously injured as a result of the grossly negligent manner in which the truck was driven. Given the state of the evidence, the jury could have disregarded Vessells's testimony and still found Verlinde guilty of gross vehicular manslaughter while intoxicated and felony drunk driving.

For the same reason, Verlinde's argument that the evidence was insufficient must fail.

When the sufficiency of the evidence is challenged, the appellate court reviews the whole record in the light most favorable to the judgment

below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) Where, as here, there is conflicting evidence, the question before us is whether any rational trier of fact could have concluded beyond a reasonable doubt that Verlinde committed the offenses, not whether we are convinced beyond a reasonable doubt. (*Id.* at p. 576.) The standard of review is the same in cases where the People rely primarily on circumstantial evidence. (*People v. Bloyd* (1987) 43 Cal.3d 333, 346 [233 Cal.Rptr. 368, 729 P.2d 802].) Before a judgment of conviction can be set aside for insufficiency of the evidence to support the trier of fact's verdict, it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support it. (*People v. Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].)

 As indicated above, the record contains substantial evidence to support the convictions even if Vessells's testimony were disregarded.

## II. *Defense of Necessity Instruction*

 Verlinde contends her convictions must be reversed because the trial court improperly refused to instruct on the defense of necessity. She asserts that such instructions were warranted by the evidence showing she took over control of the vehicle during an emergency after Vessells fell asleep. The contention is without merit.

 "The necessity defense is very limited and depends on the lack of a legal alternative to committing the crime. It excuses criminal conduct if it is justified by a need to avoid an imminent peril and there is no time to resort to the legal authorities or such resort would be futile." (*People v. Beach* (1987) 194 Cal.App.3d 955, 971 [240 Cal.Rptr. 50].) "By definition, the necessity defense is founded upon public policy and provides a justification distinct from the elements required to prove the crime." (*People v. Heath* (1989) 207 Cal.App.3d 892, 900-901 [255 Cal.Rptr. 120].) "Necessity does not negate any element of the crime, but represents a public policy decision not to punish such an individual despite proof of the crime." (*Id.* at p. 901.)

"To justify an instruction on the defense of necessity, a defendant must present evidence sufficient to establish that [she] violated the law (1) to prevent a significant and imminent evil, (2) with no reasonable legal alternative, (3) without creating a greater danger than the one avoided, (4) with a good faith belief that the criminal act was necessary to prevent the greater

harm, (5) with such belief being objectively reasonable, and (6) under circumstances in which [she] did not substantially contribute to the emergency." (*People v. Kearns* (1997) 55 Cal.App.4th 1128, 1135 [64 Cal.Rptr.2d 654].)[8]

 Here, the trial court did not err in refusing to give a necessity defense instruction because the evidence was insufficient to permit a reasonable jury to the find these elements were established. The court found the fourth and fifth elements were not satisfied.

There was no evidence that Verlinde acted with a good faith belief that she was preventing a greater harm and that such a belief was objectively reasonable under all the circumstances. We reject Verlinde's argument there was circumstantial evidence that she had the requisite good faith belief. The inference she asks us to draw is unreasonable and, at best, speculative.

Moreover, to invoke the necessity defense, Verlinde also bore the burden of presenting sufficient evidence from which a jury reasonably could conclude that she did not substantially contribute to the creation of the emergency. (*People v. Buena Vista Mines, Inc.* (1998) 60 Cal.App.4th 1198, 1202 [71 Cal.Rptr.2d 101].) Here, the evidence established that an intoxicated Verlinde created the emergency by allowing four persons to be packed into the cab of her truck after a night of drinking and then sharing the driving with one of the individuals who had been drinking. As Perez testified, everyone in both parties was too drunk to drive.

Although we recognize the public policy furthered by allowing the defense of necessity to be raised in appropriate cases to avoid criminal liability, the defense should not be invoked when it is the culpable conduct of the actor that creates or contributes to the atmosphere of necessity. Because Verlinde's own behavior substantially contributed to the emergency, the court properly refused to instruct the jury on the necessity defense.

III. *Lesser Included Offense of Vehicular Manslaughter Cannot Stand*

 The Attorney General properly concedes that Verlinde's conviction for vehicular manslaughter while intoxicated (count 2) must be reversed

---

[8]In *People v. Kearns, supra,* 55 Cal.App.4th at pages 1135 to 1136, this court endorsed the application of the necessity defense only if the *risk of harm* reasonably anticipated by the illegal act is not disproportionate to the harm avoided; we rejected use of the defense only when the *actual harm* caused by the illegal act is not disproportionate to the harm avoided. "[W]e believe that it is the potential for harm created by the act, viewed immediately prior to the illegal act, rather than a hindsight view of the harm actually caused thereby, that is necessary to support the necessity defense." (*Id.* at p. 1135.) CALJIC No. 4.43 (1998 rev.) (6th ed. 1996) incorporates this view of the third element of the necessity defense: "3. The reasonably foreseeable harm likely to be caused by the act was not disproportionate to the harm avoided."

because it is necessarily included in the greater offense of gross vehicular manslaughter while intoxicated. (*People v. Ortega* (1998) 19 Cal.4th 686, 692 [80 Cal.Rptr.2d 489, 968 P.2d 48]; *People v. Oldham* (2000) 81 Cal.App.4th 1, 16 [96 Cal.Rptr.2d 343].)

## IV. *Great Bodily Injury Enhancements*

■■■■ Verlinde contends (1) both great bodily injury enhancements should be stricken because section 12022.7, subdivision (a), as amended in 1995, violates due process, and (2) the great bodily injury enhancement imposed with respect to Vessells was inapplicable under the statutory terms of the enhancement. The first contention is without merit; however, we agree with the second contention.

Section 12022.7, subdivision (a) reads: "A person who personally inflicts great bodily injury on any person other than an accomplice in the commission or attempted commission of a felony shall, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished by an additional term of three years, unless infliction of great bodily injury is an element of the offense of which he or she is convicted." Prior to January 1, 1996, the statute read in pertinent part: "Any person who, with the intent to inflict the injury, personally inflicts great bodily injury . . . ." (Stats. 1994, ch. 873, § 3, p. 4427.) In 1995, the Legislature amended the statute by deleting the "with the intent to inflict the injury" language, thereby changing it from a specific intent to a general intent enhancement. (Stats. 1995, ch. 341, § 1.)

Verlinde bases her due process claim on the argument that the 1995 amendment in effect authorizes strict liability for a great bodily injury enhancement regardless of the state of mind of the defendant or the degree of foreseeability of the injury because the enhancement liability is unrelated to the defendant's mental state and the defendant's act. Verlinde is mistaken.

■■■■ In every crime or public offense, there must exist a union or joint operation of act and intent, or criminal negligence. (§ 20; *People v. Coria* (1999) 21 Cal.4th 868, 876 [89 Cal.Rptr.2d 650, 985 P.2d 970].) When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intent is deemed to be a general criminal intent. As a general rule, a statute proscribing willful behavior is a general intent offense. The only intent required for a general intent offense is the purpose or willingness to do the act or omission. (*People v. Thurston* (1999) 71 Cal.App.4th 1050, 1053 [84

Cal.Rptr.2d 221].) When the definition of a crime refers to the defendant's intent to do some future act or achieve some additional consequence, the crime is deemed to be a specific intent crime. (*People v. Laster* (1997) 52 Cal.App.4th 1450, 1468 [61 Cal.Rptr.2d 680].)

The 1995 amendment did not totally eliminate an intent requirement and make section 12022.7, subdivision (a) a strict liability provision; rather it made the statute a general intent provision. Contrary to Verlinde's argument, the Legislature did not ignore the mens rea requirement by amending the statute.

In *People v. Carter* (1998) 60 Cal.App.4th 752, 755-756 [70 Cal.Rptr.2d 569], the Court of Appeal interpreted section 12022.7 as requiring general intent to inflict great bodily injury. Verlinde has not cited any relevant case law requiring section 12022.7 to be a specific intent enhancement rather than a general intent enhancement.

Moreover, the trial court here instructed the jury that general criminal intent was applicable to all of the counts charged and their attendant allegations and adequately explained the concept and requirement of general intent.

Inasmuch as Verlinde's premise that section 12022.7, subdivision (a) has no mens rea requirement is incorrect, we reject the due process argument on which it is based.

However, we agree the great bodily injury enhancement imposed for the injuries sustained by Vessells cannot stand. As we indicated in part I, *ante*, Vessells is a potential accomplice of the charged crimes and the trial court erred in not giving accomplice witness instructions. Moreover, the court in instructing on the great bodily injury enhancement failed to inform the jury that injury to an accomplice is not subject to enhanced punishment. (See CALJIC No. 17.20 (1999 rev.) (6th ed. 1996).)[9]

The significance of Vessells's status as an accomplice in this context differs from that arising from Vessells's testimony as an accomplice where corroboration is required. As long as an accomplice's testimony is adequately corroborated, instructional error is rendered harmless and sufficiency of the evidence is established. In other words, where accomplice

---

[9]CALJIC No. 17.20 (1999 rev.) (6th ed. 1996) reads in pertinent part: "It is alleged [in Count[s] _____] that in the commission or attempted commission of the crime[s] therein described the defendant[s] _____, personally inflicted great bodily injury on [a person] [_____(name)] [not an accomplice to the crime]." The trial court did not include the last bracketed portion of this paragraph.

status is an evidentiary issue, it is subject to a harmless error analysis, particularly if there is corroboration. Not so when accomplice status arises in the context of section 12022.7, subdivision (a). Under section 12022.7, subdivision (a), if the great bodily injury is inflicted upon an accomplice, the enhancement is not applicable. If Vessells is an accomplice, the enhancement, by its own terms, cannot be imposed for injuries inflicted upon him. Simply put, an element of the enhancement would not be satisfied. Under these circumstances, where the jury did not properly have the opportunity to resolve a factual issue that could have made the enhancement inapplicable by its own terms, imposition of the enhancement cannot stand. The jury, if given the chance, could have found that Vessells was an accomplice and still convicted Verlinde by finding there was sufficient corroboration. However, as far as section 12022.7, subdivision (a), is concerned, corroboration is irrelevant. We cannot say the error was harmless with respect to the enhancement.

■■■ By letter to this court filed five days before the scheduled date of oral argument, Verlinde for the first time asks us to consider an argument that imposition of the great bodily injury enhancements was an unauthorized sentence (see *People v. Scott* (1994) 9 Cal.4th 331, 354 [36 Cal.Rptr.2d 627, 885 P.2d 1040]) because section 12022.7 does not "apply to murder or manslaughter . . . ." (§ 12022.7, subd. (g).) The argument is without merit.

Section 12022.7 does not define a separate offense, but rather is a legislative attempt to punish more severely those crimes that result in great bodily injury "on any person." (§ 12022.7, subd. (a); see also *People v. Parrish* (1985) 170 Cal.App.3d 336, 344 [217 Cal.Rptr. 700].) The language of section 12022.7, subdivision (g) does not limit application of the statute to this vehicular manslaughter case where, in addition to the homicide victim, two other victims suffered great bodily injury. The statutory exemption for murder and manslaughter is intended to bar imposition of an enhancement for the injuries inflicted on the homicide victim, who obviously has suffered great bodily injury. Thus, the statutory exemption prevents prohibited dual punishment for the same crime. (See § 654.) "When a defendant engages in violent conduct that injures several persons, he may be separately punished for injuring each of those persons, notwithstanding section 654. [Citation.]" (*People v. Champion* (1995) 9 Cal.4th 879, 934-935 [39 Cal.Rptr.2d 547, 891 P.2d 93].) Verlinde's argument is inconsistent with a fundamental objective of our penal justice system, namely "that one's culpability and punishment should be commensurate with the gravity of both the criminal act undertaken and the resulting injuries." (*People v. Hill* (1994) 23 Cal.App.4th 1566, 1574 [28 Cal.Rptr.2d 783].) Furthermore, a fundamental principle of statutory construction is that the language of a statute should

not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend. (*Younger v. Superior Court* (1978) 21 Cal.3d 102, 113 [145 Cal.Rptr. 674, 577 P.2d 1014].)

## DISPOSITION

The conviction for vehicular manslaughter without gross negligence is reversed.

The great bodily injury enhancement (§ 12022.7, subd. (a)) for injuries inflicted upon Vessells is vacated and remanded to the trial court for a new trial with these directions: The district attorney shall have 30 days after the remittitur is filed in which to give notice of his intent to seek retrial of the great bodily injury allegation for injuries inflicted upon Vessells. (See *People v. Henley* (1999) 72 Cal.App.4th 555, 566-567 [85 Cal.Rptr.2d 123].) If the district attorney gives such notice, the trial court shall conduct further proceedings in accordance with this opinion. If the district attorney fails to give such notice, the court shall dismiss the allegation, resentence Verlinde as the court deems appropriate, amend the abstract of judgment, and forward a copy of the amended abstract of judgment to the Department of Corrections.

In all other respects, the judgment is affirmed.

Nares, Acting P. J., and McDonald, J., concurred.

A petition for a rehearing was denied August 15, 2002, and appellant's petition for review by the Supreme Court was denied October 30, 2002.