**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RICK J. WILSON,
    *Petitioner-Appellant,*

v.

MIKE KNOWLES,
    *Respondent-Appellee.*

No. 07-17318

D.C. No.
CV-04-02858-JW

ORDER AND
OPINION

Appeal from the United States District Court
for the Northern District of California
James Ware, District Judge, Presiding

Argued and Submitted
January 12, 2011—San Francisco, California

Filed April 1, 2011

Before: Alex Kozinski, Chief Judge, John T. Noonan and
Barry G. Silverman, Circuit Judges.

Opinion by Judge Noonan;
Dissent by Chief Judge Kozinski

## COUNSEL

John Balazs, Sacramento, California, for the petitioner.

Edmund G. Brown Jr., Attorney General of California, Gerald A. Engler, Senior Assistant Attorney General, Gregory A. Ott, Deputy Attorney General, and Peggy S. Ruffra, Supervising Deputy Attorney General, San Francisco, California, for the respondent.

## ORDER

The Opinion and Dissent filed February 8, 2011 are withdrawn. A new Opinion and Dissent are filed herewith.

With this Opinion, the petition for rehearing is DENIED and the petition for rehearing en banc is DENIED. Chief Judge Kozinski would grant the petition for rehearing and the petition for rehearing en banc.

The full court has been advised of the petition for rehearing en banc, and no judge of the court has requested a vote whether to rehear the matter en banc. Fed. R. App. P. 35.

## OPINION

NOONAN, Circuit Judge:

Rick Wilson appeals the denial of his petition for a writ of habeas corpus. Holding that the California courts violated Wilson's right to due process under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), we reverse the judgment of the district court and remand.

### BACKGROUND

In 1993, Wilson pleaded no contest to gross vehicular manslaughter while driving under the influence of alcohol in vio-

lation of California Penal Code § 191.5(a), and to proximately causing bodily injury while driving under the influence of alcohol in violation of California Vehicle Code § 23153(b). There was a preliminary hearing but no trial. He served one year of imprisonment in a residence for the treatment of addiction.

Both convictions resulted from a single accident. Wilson had driven with his girlfriend Deborah Horvat from Reno, Nevada into California. At some point, Horvat gave Wilson the keys and asked him to drive. They picked up a hitchhiker, John Haessly, along the way. Wilson had been drinking and drove at a high rate of speed. The car veered off the road and flipped over. Haessly was killed, and Horvat was injured.

## PROCEEDINGS

In the latest case, Wilson was convicted in 2000 by a jury of driving under the influence with a prior felony conviction. *See* Cal. Veh. Code §§ 23152(a), 23550.5. The trial judge found this conviction to be Wilson's third strike under California Penal Code § 667(b)-(i). The judge in 2000 found that the 1993 convictions counted as the first and second strikes. He sentenced Wilson to imprisonment for 25 years to life.

The prosecutor in 2000 had introduced numerous documents, including the information and preliminary hearing transcript from 1993, to establish that the conviction for injuring Horvat should count as a strike. The trial judge in 2000 examined this evidence and announced: "So I feel the evidence presented does satisfy me that—and I'll make additional findings as well that the prior conviction alleged for felony driving under the influence of alcohol with . . . personal infliction with great bodily injury alleged as first prior conviction within the meaning of 667(b) through 667(i) and 1170.12, that that allegation is true."

The California Court of Appeal affirmed Wilson's sentence. Justice Rushing dissented and would have found that the trial court violated *Apprendi*. Wilson presented the issue to the state supreme court, which denied his petition for review on the merits.[1] Wilson then sought federal habeas relief. The district court denied his petition, holding that "there is no 'clearly established' federal right to jury trial in determining the legal significance of a prior conviction."

Wilson appeals.

## ANALYSIS

*The Standard of Review*. We review a district court's denial of a habeas petition de novo. *Lopez v. Thompson*, 202 F.3d 1110, 1116 (9th Cir. 2000) (en banc). We review the state court's ruling under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) because Wilson filed his petition after AEDPA entered into effect. *Martinez v. Garcia*, 379 F.3d 1034, 1037 (9th Cir. 2004). We may grant habeas relief only if the state court's decision was "contrary to, or involved an unreasonable application of" clearly established Supreme Court precedent, or "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(1)-(2).

[1] *Apprendi Error*. The Supreme Court held in *Apprendi* that, except for the fact of a prior conviction, any facts that increase a defendant's sentence beyond the statutory maximum must be proved to a jury beyond a reasonable doubt. *See*

---

[1]The government argues that Wilson failed to exhaust his state remedies because he didn't present the *Apprendi* issue to the state court of appeal. But the state supreme court's denial of the claim on the merits is sufficient to allow Wilson to proceed. *See Greene v. Lambert*, 288 F.3d 1081, 1086 (9th Cir. 2002) ("[E]xhaustion does not require repeated assertions if a federal claim is actually considered at least once on the merits by the highest state court. . . . If the Washington Supreme Court declined to apply the procedural bar that was available to it and adjudicated the claim on the merits, then the claim may proceed.").

*Apprendi*, 530 U.S. at 490. The trial judge in this case in 2000 found three additional facts about the 1993 accident that increased Wilson's sentence to 25 years to life: First, that Wilson *personally* inflicted bodily injury on Horvat; second, that the injury was *great*; and third, that the victim was not an accomplice. These facts weren't necessary to Wilson's 1993 conviction, and there was no purpose in his challenging them at the time of that conviction in 1993. The issue is whether these findings made in 2000 fell within the prior conviction exception.

**[2]** Courts may reasonably disagree about some of the precise boundaries of the exception. *See Kessee v. Mendoza-Powers*, 574 F.3d 675, 676 (9th Cir. 2009). For example, it isn't clearly established whether a judge may find the fact that a defendant was on probation at the time of an earlier conviction. *Id.* at 678. But that does not mean that *Apprendi* is amorphous. It would be unreasonable to read *Apprendi* as allowing a sentencing judge to find the kinds of disputed facts at issue here—such as the extent of the victim's injuries and how the accident occurred.[2] These are not historical, judicially noticeable facts. The judge in 2000 speculated as to how a jury in 1993 might have evaluated the evidence if the evidence had been offered and if a jury had been impaneled to evaluate it. *See United States v. Brown*, 417 F.3d 1077, 1079-80 (9th Cir. 2005) (per curiam). Wilson did not have any reason to contest these alleged facts when he was convicted in 1993. *See Apprendi*, 530 U.S. at 488 (emphasizing importance of proce-

---

[2]The government points to a Second Circuit decision that stated that "[j]udges frequently must make factual determinations for sentencing, so it is hardly anomalous to require that they also determine the 'who, what, when, and where' of a prior conviction." *United States v. Santiago*, 268 F.3d 151, 156 (2d Cir. 2001). But the court there held only that a judge may find that prior convictions arose from offenses committed on different occasions—a ministerial inquiry into dates, not into the nature of the offenses or how they occurred. *Id.* at 155, 156-57. Indeed, it expressly declined to reach whether the prior conviction exception "extends to *all* issues related to recidivism." *Id.* at 156.

dural safeguards during earlier proceeding). The judge's fact-finding seven years after the 1993 conviction extended beyond any reasonable interpretation of the prior conviction exception. *See DeWeaver v. Runnels*, 556 F.3d 995, 997 (9th Cir. 2009) (explaining that the state court violates the "unreasonable application" prong when it "extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable") (citation and internal quotations marks omitted). It is utterly unreasonable to hold that what a judge in 2000 imagines might have happened in 1993 is the same as a conviction in 1993.

**[3]** *The harm*. The fallback position of the government is that the error was harmless. To make that argument work, the government imagines what would have happened if in 1993 Wilson had been charged with the infliction of great bodily injury and gone to trial. But we really don't know what would have happened. Wilson might have created reasonable doubt as to whether Horvat caused the accident by grabbing the steering wheel or acted as an accomplice by giving a drunk Wilson her keys. *See, e.g.*, *People v. Verlinde*, 123 Cal. Rptr. 2d 322, 334 (Ct. App. 2002). Wilson might also have successfully challenged the prosecution's evidence about the extent of Horvat's injuries. No court could now look at the disputed facts about an accident seven years earlier and conclude beyond a reasonable doubt that Wilson would have been convicted of personally inflicting great bodily injury. Wilson's first strike, as determined by the court in this case, does not exist. It is a crime created by speculation as to what might have been shown in 1993.

**[4]** The state's petition for rehearing has afforded opportunity to take into account the Supreme Court's summary of its habeas jurisprudence in *Harrington v. Richter*, 131 S.Ct. 770 (2011). No reasonable judge could rule that a conviction of causing bodily injury was the same as a conviction of causing great bodily injury. No reasonable judge could hold that a charge that might have been made and proved is equivalent to

an actual conviction. No reasonable judge could hold that the *Apprendi* exception was satisfied by a California court, 7 years after the criminal proceedings were completed, making a guess as to what could have been proved if the 1993 prosecution of Wilson had been different.

For these reasons, the judgment of the district court is REVERSED and the case is REMANDED.

---

Chief Judge KOZINSKI, dissenting:

The Supreme Court held in *Apprendi* that the government must submit to a jury, and prove beyond a reasonable doubt, any fact that exposes a criminal defendant to a higher range of penalties. *See Apprendi* v. *New Jersey*, 530 U.S. 466, 490 (2000). But it also carved out an exception: A judge may find "the fact of a prior conviction." *Id.*; *see Almendarez-Torres* v. *United States*, 523 U.S. 224, 239, 247 (1998). Courts have since debated and disagreed about the scope of the exception, and the Supreme Court hasn't stepped in to draw a clear line for us. *See Kessee* v. *Mendoza-Powers*, 574 F.3d 675, 677 (9th Cir. 2009) ("[T]he task of determining the precise contours of that exception has been left to the federal appellate courts."); *see also Shepard* v. *United States*, 544 U.S. 13, 27 (2005) (Thomas, J., concurring in part and concurring in the judgment).

It's hard to believe that the Sixth Amendment permits a sentencing judge to find disputed facts about what happened during a defendant's prior offense. This is especially true when the defendant had no reason to challenge them at the time of the original conviction. Here, for example, there was no doubt Horvat suffered bodily injuries. Any cross-examination of the victim about the extent of those injuries would have served no purpose, wasted the judge's time and enabled the victim to describe her suffering one more time.

The original court records thus provide incomplete informa-
tion, and it's impossible for a judge today to know that a jury
would have found that Horvat's injuries were "great." Wilson
may have also raised reasonable doubt as to whether he *per-
sonally* inflicted the injuries on a *non-accomplice*: Although
he had little incentive to develop the record, there was at least
some evidence that Horvat directly caused the accident by
grabbing the wheel and that she encouraged Wilson to drive
drunk.

But, under AEDPA, Wilson must point to a Supreme Court
holding clearly establishing that a judge may not find facts
about the offense underlying his prior conviction. *See Lockyer*
v. *Andrade*, 538 U.S. 63, 71-72 (2003). Read literally,
*Apprendi* itself seems to limit judges to finding the mere *fact*
of the prior conviction. But courts have sometimes read the
exception more expansively. *See, e.g.*, *United States* v. *Santi-
ago*, 268 F.3d 151, 156 (2d Cir. 2001) (Sotomayor, J.) ("In
short, we read *Apprendi* as leaving to the judge . . . the task
of finding not only the mere fact of previous convictions but
other related issues as well. Judges frequently must make fac-
tual determinations for sentencing, so it is hardly anomalous
to require that they also determine the 'who, what, when, and
where' of a prior conviction."). The Supreme Court hasn't
straightened all this out. The best we've been able to say is
that the Court's uncertain precedent "strongly *suggests* that
the . . . exception does not extend to any and all facts related
to a prior conviction." *Butler* v. *Curry*, 528 F.3d 624, 644 (9th
Cir. 2008) (emphasis added) (citing *Shepard*, 544 U.S. at
25-26 (plurality opinion)). This means that, as of 2008, we
concluded that there was no clearly established Supreme
Court authority as to whether the exception permits sentenc-
ing judges to find the kinds of underlying facts at issue here.
The law certainly wasn't clearly established when Wilson's
sentence became final five years earlier. Nor was the state
court's rejection of Wilson's claim an objectively unreason-
able application of the ambiguous language in *Apprendi* itself.

AEDPA deference can be a bitter pill to swallow. *See, e.g.*, *Brown* v. *Payton*, 544 U.S. 133, 148 (2005) (Breyer, J., concurring); *see also Harrington* v. *Richter*, 131 S. Ct. 770, 780-81 (2011) (reversing for failure to defer to state court decision); *Premo* v. *Moore*, 131 S. Ct. 733, 740 (2011) (same). In some habeas cases, we must reject what appear to be valid constitutional claims because petitioner's rights have not yet been clearly established by the Supreme Court. This appears to me to be such a case. I hope I'm wrong.