Filed 3/19/14  P. v. Aspinwall CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H039158 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1239867) |
| v. | |
| DEAN FRANCES ASPINWALL, | |
| Defendant and Appellant. | |

## STATEMENT OF THE CASE

A jury convicted defendant Dean Francis Aspinwall of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)) and hit and run driving causing property damage (Veh. Code, § 20002, subd. (a)).  The trial court sentenced defendant to four years in prison.

Defendant now appeals from the judgment of conviction.  He makes the following arguments on appeal:  1) the trial court erred in admitting his prior convictions for impeachment purposes, and, in the alternative, defense counsel was ineffective in failing to adequately object to the admission of the prior convictions; 2) the trial court erred in admitting evidence regarding a restraining order, and defense counsel rendered ineffective assistance in failing to object to the evidence pursuant to Evidence Code section 352; 3) the trial court erred in refusing to instruct the jury on necessity as a defense to the hit and run charge; and 4) cumulative error warrants reversal.

As set forth below, we find no merit in defendant's claims. We therefore will affirm the judgment of conviction.

## STATEMENT OF THE FACTS

*The Prosecution's Evidence*

On the evening of August 24, 2012, defendant arrived at a parking lot located at the corner of Stevens Creek Boulevard and Northlake Drive in San Jose. The parking lot was frequented by homeless people who lived in vans and cars. Defendant, Dale Goldsmith, and Lahna Yosten were among the people who frequented the parking lot.

When defendant arrived at the parking lot, defendant told Goldsmith that defendant's brother had obtained a restraining order against defendant. Defendant explained that his brother's girlfriend had served him with the restraining order. Goldsmith testified that defendant was agitated and "pretty pissed off" about the restraining order. Defendant told Goldsmith that "it was time for payback." Defendant retrieved a baseball bat from his van, and he walked away from the parking lot. He returned to the parking lot 45 minutes later, and he told Goldsmith that he had broken the windows of his brother's girlfriend's car. Goldsmith noticed that defendant's hand was "cut up" and bleeding

Goldsmith began to walk away from defendant, and defendant asked whether Goldsmith had seen Joseph.[1] Goldsmith testified that Joseph was connected to defendant's brother. Goldsmith explained that Joseph and defendant's brother did work for each other, and that Joseph worked on cars for defendant's brother. After asking Goldsmith about Joseph's whereabouts, defendant drove his van across Stevens Creek Boulevard and parked the van.

---

[1] Joseph was referred to only by his first name at trial. None of the witnesses provided Joseph's last name.

Later that evening, defendant walked back to the parking lot. Joseph arrived at the parking lot, and defendant asked Joseph, "What do you have going with my brother?" Defendant threw a punch at Joseph, and the two men began to fight. Goldsmith pulled defendant and Joseph apart. Joseph began to walk away, and defendant yelled racial slurs at Joseph. Joseph's half-brother, Tupac,[2] punched defendant and said he did not like defendant's choice of language. Three or four other men joined in and punched and kicked defendant. Goldsmith broke up the fighting.

Defendant looked mad and determined, and he walked across Stevens Creek Boulevard to his van. He took a bat from his van, and he walked back toward the parking lot. Defendant hefted the bat over his shoulder and moved it around. Individuals in the parking lot grabbed tire irons, iron bars, and fireplace pokers. Four or five of the individuals approached defendant. Defendant backed up and went back to his van.

Defendant sat in the van's driver's seat for a few minutes. He then "gunned" the engine and drove across Steven's Creek Boulevard toward the parking lot, driving over the center median. Tupac was standing on the sidewalk adjacent to the parking lot, and defendant drove up onto the sidewalk. Defendant drove on the sidewalk at a speed of 25 to 30 miles per hour. He made a right-hand turn and accelerated into the parking lot.

Yosten's car was parked in the parking lot, and Yosten was standing next to her car. Defendant turned his van towards the area where Yosten's car was parked. He pointed his van in the direction of Yosten and her car, and he "headed straight towards" Yosten at a speed of 35 to 40 miles per hour. Defendant's van "swerve[d] at the last second," and it struck Yosten's car. The impact threw Yosten to the ground 15 feet away from her car. She was unconscious, and her humerus was fractured.

---

[2] Like Joseph, none of the witnesses at trial provided Tupac's last name.

After defendant's van struck Yosten's car, defendant drove the van onto Stevens Creek Boulevard. He accelerated, and he drove up to Tupac's parked van. While accelerating, defendant made a right-hand turn "directly into" the front of Tupac's van. Defendant's van "knocked" the front end of Tupac's van onto the sidewalk. Defendant accelerated again, and his van "ran into" a parked dump truck. The dump trucked moved four to five feet, hitting the car parked in front of it. Defendant backed his van into the parking lot, and the van got stuck underneath a tree. He tried to get out of the van, and six or seven people ran toward him. Defendant was able to open one of the van's doors, and he ran away.

### The Defense Evidence

Defendant was the only defense witness. He denied breaking the windows of his brother's girlfriend's car, he denied yelling racial slurs, he denied hitting Yosten's van, and he denied hitting the dump truck.

Defendant admitted throwing a punch at Joseph. He testified that he was thereafter attacked by Tupac and other individuals in the parking lot, but he was able to break free and return to his van. After defendant escaped from the attack, he approached the parking lot with a bat because he wanted to "confront them all." He was "upset" when people in the parking lot grabbed weapons, and he again returned to his van. He testified that he drove across the center median because he "wanted them to see [his] state of mind." He admitted driving on the sidewalk, but only at a speed of three to five miles per hour. After driving on the sidewalk, he drove through the parking lot without hitting Yosten's car. He explained that when he drove through the parking lot "nobody . . . was around," and everyone who had been in the parking lot had "dispersed."

After driving through the parking lot, defendant turned onto Stevens Creek Boulevard and revved his engine because he wanted to let everyone know that he was still there. He was "mad" that the men who had attacked him had left the area. He

4

accelerated to a speed of 35 to 40 miles per hour, and he made a right-hand turn. He lost control of his van and hit Tupac's van. Defendant stepped out of his van and "immediately started to flee the scene" because he was afraid that "[s]ix black gentlemen" would attack him. He also fled because he believed police would come to the scene.

Defendant testified that he spoke with police after the incident, and that the version of events he provided to the police differed from his trial testimony. When defendant spoke to the police, he denied driving in the fashion that he had described at trial. He told the police that someone must have taken his van.

Defendant testified that he had suffered prior criminal convictions. He admitted a 1992 conviction for misdemeanor "spousal violence," a 1992 conviction for felony "spousal battery," and a 2003 conviction for misdemeanor "brandishing a weapon."

## DISCUSSION

### I. Impeachment with Prior Convictions

Defendant contends that the judgment must be reversed because the trial court erroneously admitted his prior convictions for impeachment purposes. Specifically, he argues, "The trial court erred in allowing in these prior convictions since, as a matter of law, none of these constitute crimes involving moral turpitude." In the alternative, he asserts that his trial counsel rendered ineffective assistance in failing to object to the admission of the prior convictions on the ground of lack of moral turpitude. We find no merit in defendant's claims.

#### A. *Background*

The prosecutor moved to impeach defendant with his misdemeanor domestic violence conviction (Pen. Code, § 273.5, subd. (a)), his felony domestic violence

5

conviction (Pen. Code, § 273.5, subd. (a)), and his misdemeanor brandishing conviction (Pen. Code, §417, subd. (a)(1)).  Defense counsel conceded that all of the prior convictions involved "moral turpitude under the law."  Defense counsel objected to the admission of the prior convictions, however, on the ground that they were remote in time and impermissibly tended to show a propensity for violence.  The trial court ruled that the convictions were admissible to impeach defendant's testimony.

### B.  *Defendant Has Not Established Trial Court Error*

"A general objection to the admission or exclusion of evidence, or one based on a different ground from that advanced at trial, does not preserve the claim for appeal." (*People v. Marks* (2003) 31 Cal.4th 197, 228 (*Marks*).)  Thus, because defense counsel never argued that the prior convictions lacked moral turpitude, defendant's claim that the trial court erred in failing to exclude the convictions due to their lack of moral turpitude is not cognizable on appeal.  Indeed, given that defense counsel conceded that the convictions involved moral turpitude, we cannot now conclude that the trial court erred in failing to deem the convictions lacking in moral turpitude.  (See *People v. Partida* (2005) 37 Cal.4th 428, 435 [a defendant "cannot argue the court erred in failing to conduct an analysis it was not asked to conduct"].)  Defendant therefore has not established that the trial court erred in failing to exclude the prior convictions due to the absence of moral turpitude.  (See *Marks, supra,* 31 Cal.4th at pp. 228-229 [where defense counsel objected to the admission of a prior conviction for impeachment purposes, but did not assert that the conviction lacked moral turpitude, the defendant's claim that the prior conviction was inadmissible due to lack of moral turpitude was not cognizable on appeal].)


### C.  *Defense Counsel Did Not Render Ineffective Assistance*

The defendant bears the burden of proving ineffective assistance of counsel. (*People v. Carter* (2003) 30 Cal.4th 1166, 1211 (*Carter*).)  To obtain reversal due to

6

ineffective assistance, a defendant must first show "that defense counsel's performance fell below an objective standard of reasonableness, i.e., that counsel's performance did not meet the standard to be expected of a reasonably competent attorney." (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003 (*Cunningham*); *Strickland v. Washington* (1984) 466 U.S. 668, 688 (*Strickland*).) Second, the defendant must show that there is "a reasonable probability that defendant would have obtained a more favorable result absent counsel's shortcomings." (*Cunningham, supra,* 25 Cal.4th at p. 1003.)

"A reviewing court will indulge in a presumption that counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." (*Carter, supra,* 30 Cal.4th 1166, 1211; see also *People v. Witcraft* (2011) 201 Cal.App.4th 659, 664.) Where the record on appeal "does not show the reason for counsel's challenged actions or omissions, the conviction must be affirmed unless there could be no satisfactory explanation." (*People v. Anderson* (2001) 25 Cal.4th 543, 569.)

"The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." (*Strickland, supra,* 466 U.S. at p. 697.)

Here, defense counsel was not deficient in failing to argue that defendant's domestic violence convictions were inadmissible due to their lack of moral turpitude. There was a satisfactory explanation for his failure to make such an objection. Domestic violence convictions pursuant to Penal Code section 273.5 necessarily involve moral turpitude and are thus admissible for impeachment purposes. (*People v. Rodriguez* (1992) 5 Cal.App.4th 1398, 1402; see also *Donley v. Davi* (2009) 180 Cal.App.4th 447, 461 [a misdemeanor violation of Penal Code section 273.5 "is a crime of moral turpitude as a matter of law"]; 3 Witkin, Cal. Evidence (5th ed. 2012)

7

Presentation at Trial § 318, p. 447 [a Penal Code section 273.5 conviction involves moral turpitude].) Defense counsel therefore was not deficient in failing to seek exclusion of defendant's Penal Code section 273.5 domestic violence convictions on the ground that they lacked moral turpitude.[3] (See *People v. Bradley* (2012) 208 Cal.App.4th 64, 90 ["Failure to raise a meritless objection is not ineffective assistance of counsel."].)

Nor did defense counsel render ineffective assistance in failing to argue that defendant's brandishing conviction was inadmissible due to a lack of moral turpitude. Defendant has failed to show that he was prejudiced by the admission of that conviction. Defendant's credibility was significantly damaged, notwithstanding the admission of his brandishing conviction. Defendant admitted that the version of events he provided to police was completely different from the version of events he described at trial. There were many inconsistencies in defendant's testimony,[4] and the trial court found that defendant's testimony was "not . . . credible in almost every respect." Additionally, as

---

[3] In support of his claim that defense counsel should have made a moral turpitude objection to the domestic violence convictions, defendant cites a Ninth Circuit case, *Morales-Garcia v. Holder* (9th Cir. 2009) 567 F.3d 1058 (*Morales-Garcia*). *Morales-Garcia* held that a Penal Code section 273.5 conviction is not a crime of moral turpitude for federal immigration purposes. (*Id.* at p. 1060.) Defendant's reliance on *Morales-Garcia* is unavailing. The decisions of intermediate federal appellate courts "are not binding on state courts." (*In re Roderick* (2007) 154 Cal.App.4th 242, 307.) Thus, *Morales-Garcia* in no way requires us to conclude that defense counsel rendered ineffective assistance in failing to make a moral turpitude objection to the admission of defendant's domestic violence convictions.

[4] We note some of the inconsistencies in defendant's testimony. Defendant repeatedly testified that no one was at the scene when he struck Tupac's van, yet he explained that he fled after striking the van because he feared individuals at the scene would attack him. He repeatedly testified that he was "calm" during the incident, but he also described his mood as "agitated" and "mad." He insisted that he drove safely during the entire incident, but he admitted that it was not safe to drive on the sidewalk. He denied striking Yosten's car, but he was unable to explain the cause of the extensive damage to her car.

8

noted above, defendant's domestic violence convictions involved moral turpitude and were admissible to impeach the credibility of his testimony. Thus, even if the brandishing conviction had not been admitted, defendant's credibility still would have been extremely impaired. Defendant therefore has failed to show the requisite reasonable probability of a more favorable result absent counsel's shortcomings. We therefore must conclude that counsel did not render ineffective assistance in failing to make a moral turpitude objection to the brandishing conviction. (See generally *Cunningham, supra,* 25 Cal.4th at p. 1003 [ineffective assistance of counsel is established only where there is "a reasonable probability that defendant would have obtained a more favorable result absent counsel's shortcomings"].)

## II. *Evidence Regarding the Restraining Order*

Defendant contends that the judgment must be reversed because the trial court erroneously admitted evidence that his brother had obtained a restraining order against him. Specifically, he asserts that the trial court erred in refusing to exclude the evidence as irrelevant. Defendant additionally contends that his trial counsel rendered ineffective assistance in failing to seek exclusion of the evidence pursuant to Evidence Code section 352. We conclude that the trial court did not err, and that trial counsel did not render ineffective assistance.

### A. *Background*

Before trial, defense counsel moved to exclude evidence that defendant had been served with a restraining order that prevented him from contacting his brother. Defense counsel argued the restraining order was irrelevant because there was no "direct nexus . . . between the restraining order and this case."

After reviewing the preliminary hearing transcript, the trial court ruled that the restraining order evidence was relevant and admissible. The court explained: "Well, it seems like in reviewing the prelim testimony of Mr. Goldsmith, that the defendant—the

9

first thing that happened was that the defendant told Mr. Goldsmith something about the restraining order and that he wanted to talk to Joseph . . . . [T]he defendant apparently saw [Joseph], came up to him, and asked Joseph what he and his brother had going on and started swinging on him. And from then on it just continues." The court noted that defendant's act of punching Joseph instigated a continuous, widespread altercation that culminated with defendant driving into Yosten's car and other parked vehicles. The court concluded, "So it seems like all of that was one continuous action. And I don't think it would make any sense not to allow the jury to hear what precipitated . . . the charged conduct because otherwise it's just not going to make any sense."

## B. *The Trial Court Did Not Abuse its Discretion*

"As a general rule, all relevant evidence is admissible." (*People v. Mendoza* (1998) 18 Cal.4th 1114, 1136.) "Evidence is relevant if it has any tendency in reason to prove or disprove a material issue." (*Ibid.*) "The test of relevance is whether the evidence tends ' "logically, naturally, and by reasonable inference" to establish material facts such as identity, intent, or motive.' " (*People v. Scheid* (1997) 16 Cal.4th 1, 13.)

"The trial court is vested with wide discretion in determining the relevance of evidence." (*People v. Babbitt* (1988) 45 Cal.3d 660, 681.) "The [trial] court, however, has no discretion to admit irrelevant evidence." (*Ibid.*) An appellate court reviews a trial court's ruling on the relevance of evidence for abuse of discretion. (*Id.* at pp. 682-683.)

Here, contrary to defendant's assertion, the trial court did not abuse its discretion in refusing to exclude the restraining order evidence as irrelevant. The restraining order was relevant because it constituted the motive for defendant's initial confrontation with Joseph: defendant confronted Joseph, who associated with defendant's brother, because defendant was angry about the restraining order. Defendant's act of confronting Joseph instigated an altercation between defendant and the people in the parking lot, and that widespread altercation concluded with defendant driving his van into Yosten's car and

10

the other parked vehicles. The evidence regarding the restraining order was thus relevant to show why defendant initiated a course of conduct that culminated in his commission of the charged crimes. As the trial court noted, the charged conduct was "not going to make any sense" unless the jury heard evidence regarding defendant's motive for engaging in the initial confrontation with Joseph. We therefore conclude that the trial court did not abuse its discretion in refusing to exclude the restraining order evidence as irrelevant. (See generally *People v. Bivert* (2011) 52 Cal.4th 96, 116-117 [evidence is relevant and thus admissible if it tends to establish motive].)

### C. *Defense Counsel Did Not Render Ineffective Assistance*

Defendant contends that defense counsel rendered ineffective assistance in failing to seek exclusion of the restraining order evidence pursuant to Evidence Code section 352.[5] Defendant additionally asserts that defense counsel rendered ineffective assistance in failing to make an Evidence Code section 352 objection to the evidence that defendant broke his brother's girlfriend's car windows.

Defendant's ineffective assistance claim fails because he has not shown that he was prejudiced by defense counsel's failure to make an Evidence Code section 352 objection. (See *Strickland, supra,* 466 U.S. at p. 697 [an ineffective assistance claim fails if the defendant does not establish prejudice].) Defendant theorizes that the evidence regarding the restraining order and the broken car windows destroyed the credibility of his testimony, and that he would have achieved a more favorable verdict if defense counsel had made a successful Evidence Code section 352 objection. Defendant's theory is unconvincing. Defendant's credibility was significantly damaged, regardless of the evidence concerning the restraining order and the broken windows. As discussed in part

---

[5] Evidence Code section 352 states: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

I.C., *ante*, defendant admitted that the version of events he provided to police was completely different from the version of events he described at trial, there were many inconsistencies in defendant's testimony, the trial court found that defendant's testimony was not credible, and defendant's domestic violence convictions impeached his testimony. Thus, even if defense counsel had succeeded in excluding the evidence regarding the restraining order and the broken windows, the jury would not have been apt to credit defendant's testimony. Defendant therefore has failed to establish the requisite reasonable probability of a more favorable result absent counsel's shortcomings, and we must conclude that counsel did not render ineffective assistance in failing to make an Evidence Code section 352 objection. (See generally *Cunningham, supra,* 25 Cal.4th at p. 1003 [to establish ineffective assistance, the defendant must show that there is "a reasonable probability that defendant would have obtained a more favorable result absent counsel's shortcomings"].)

## III. *Necessity Instruction*

Defendant contends that his hit and run conviction must be reversed because the trial court refused to instruct pursuant to CALCRIM No. 3403, which articulates the defense of necessity. Specifically, he asserts that the trial court was required to give CALCRIM No. 3403 as a defense to the hit and run charge because there was substantial evidence that he ran away from the scene "out of necessity in fear that the group in the parking lot was intending on attacking him." We conclude that there was not substantial evidence to support a necessity instruction, and that the trial court therefore did not err in refusing to instruct pursuant to CALCRIM No. 3403.

### A. *Background*

Defense counsel requested that the trial court instruct pursuant to CALCRIM No. 3403 as a defense to the hit and run charge. The court refused to give CALCRIM No. 3403. The court explained: "And so there are six elements that the defense has to

prove, and one of them is that the defendant did not substantially contribute to the emergency. It seemed to me, based upon the evidence that I heard, that that wasn't going to be able to be shown and the Court has to instruct on the defense when there is substantial evidence supporting the defense. And, frankly, I just don't think there was any substantial evidence supporting that defense, and that's why I didn't give it."

## B. *The Trial Court Did Not Err*

"A defendant is entitled to instruction on request on any defense for which substantial evidence exists." (*People v. Miceli* (2002) 104 Cal.App.4th 256, 267.) "However, the trial court need give a requested instruction concerning a defense only if there is substantial evidence to support the defense." (*Ibid.*) "On review, we determine independently whether substantial evidence to support a defense existed." (*People v. Shelmire* (2005) 130 Cal.App.4th 1044, 1054.)

" 'The necessity defense is very limited and depends on the lack of a legal alternative to committing the crime. It excuses criminal conduct if it is justified by a need to avoid an imminent peril and there is no time to resort to the legal authorities or such resort would be futile.' [Citation.]" (*People v. Verlinde* (2002) 100 Cal.App.4th 1146, 1164.) The defense of necessity cannot be invoked "when it is the culpable conduct of the actor that creates or contributes to the atmosphere of necessity." (*Id.* at p. 1165.)

"To justify an instruction on the defense of necessity, there must be evidence sufficient to establish that defendant violated the law (1) to prevent a significant evil, (2) with no adequate alternative, (3) without creating a greater danger than the one avoided, (4) with a good faith belief in the necessity, (5) with such belief being objectively reasonable, and (6) *under circumstances in which he did not substantially contribute to the emergency*." (*People v. Pepper* (1996) 41 Cal.App.4th 1029, 1035, italics added.)

13

CALCRIM No. 3403 articulates the defense of necessity. CALCRIM No. 3403 states, in pertinent part: "The defendant is not guilty of _____<insert crime[s]> if (he/she) acted because of legal necessity. [¶] In order to establish this defense, the defendant must prove that: [¶] 1. (He/She) acted in an emergency to prevent a significant bodily harm or evil to (himself/herself/ [or] someone else); [¶] 2. (He/She) had no adequate legal alternative; [¶] 3. The defendant's acts did not create a greater danger than the one avoided; [¶] 4. When the defendant acted, (he/she) actually believed that the act was necessary to prevent the threatened harm or evil; [¶] 5. A reasonable person would also have believed that the act was necessary under the circumstances; [¶] AND [¶] 6. *The defendant did not substantially contribute to the emergency.*" (CALCRIM No. 3403, italics added.)

Here, defendant theorizes that instruction pursuant to CALCRIM No. 3403 was required because the evidence showed that he ran from the scene after hitting the parked vehicles due to fear that he would be imminently attacked by angry individuals in the parking lot.[6] We are not persuaded by defendant's theory and conclude that there was not substantial evidence to support CALCRIM No. 3403.

Although defendant testified that he feared imminent attack after he hit Tupac's van, the evidence failed to show that defendant did not substantially contribute to that emergency. Rather, both the prosecution's evidence and the defense evidence established that defendant substantially contributed to the emergency situation that prompted him to flee the scene. The prosecution's evidence showed that defendant attacked Joseph,

---

[6] Defendant was convicted of hit and run driving in violation of Vehicle Code section 20002, subdivision (a). Vehicle Code section 20002, subdivision (a) states, in pertinent part: "The driver of any vehicle involved in an accident resulting only in damage to any property, including vehicles, shall immediately stop the vehicle at the nearest location that will not impede traffic or otherwise jeopardize the safety of other motorists." Defendant contends that an instruction on the defense of necessity would have excused his failure to stop after the collision with the parked vehicles.

14

approached the individuals in the parking lot while wielding a bat, quickly drove his van on the sidewalk on which Tupac was standing, pointed his van at Yosten and accelerated "straight towards" her, and drove his van "directly into" Tupac's parked van. The defense evidence showed that defendant threw the first punch at Joseph, approached the individuals in the parking lot with a bat in order to "confront them all," drove his van across the center median to show the individuals in the parking lot his "state of mind," revved his engine to show everyone that he was "mad," and recklessly made a turn at a high rate of speed before losing control of his van and hitting Tupac's van. Thus, under both the prosecution's evidence and the defense evidence, defendant engaged in confrontational conduct likely to incite anger and a forcible response from the individuals in the parking lot. The evidence therefore established that defendant created the emergency situation that prompted him to flee. We accordingly conclude that there was no substantial evidence that defendant did not substantially contribute to the emergency, and that the trial court did not err in refusing to give CALCRIM No. 3403. (See generally *Verlinde, supra,* 100 Cal.App.4th at p. 1165 [a necessity instruction was not required where the evidence established that the defendant created the emergency].)

## IV. Cumulative Error

Defendant contends that cumulative error warrants reversal. In assessing a claim of cumulative error, the critical question is "whether defendant received due process and a fair trial." (*People v. Kronemyer* (1987) 189 Cal.App.3d 314, 349.) As discussed above, defendant has failed to show any errors in the trial court proceedings. As there were no errors that could have impacted his due process and fair trial rights, there was no cumulative error in this case.

## DISPOSITION

The judgment is affirmed.

_____
RUSHING, P.J.

WE CONCUR:

_____
PREMO, J.

_____
MÁRQUEZ, J.