Filed 5/15/24  P. v. Colon CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>GEORGE COLON,<br><br>    Defendant and Appellant. | G063477<br><br>(Super. Ct. No. RIF2200164)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Riverside County, Timothy F. Freer, Judge.  Affirmed.

Alex Kreit, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

Following a jury trial, George Colon was convicted of driving under the influence of marijuana and causing bodily injury to his passenger A.M. (Veh. Code, § 23153, subd. (f)).  The jury also found he personally inflicted great bodily injury upon A.M., who was not an accomplice to the offense (Pen. Code, §§ 12022.7, subd. (a), 1192.7, subd. (c)(8)).[1]  At sentencing, the court selected the midterm sentence of two years and doubled it to four years because Colon had a prior strike conviction; the court also imposed a consecutive three-year term for the great bodily injury enhancement, for a total prison sentence of seven years.

Colon raises four issues on appeal:  (1) the court committed prejudicial error by permitting the prosecution's toxicology expert to give her opinion he was impaired at the time of the crash; (2) the great bodily injury enhancement must be reversed because the court failed to instruct on one of its elements; (3) the court abused its discretion by imposing the midterm sentence; and (4) the court erred by imposing two sentencing enhancements.  We reject each argument and affirm the judgment.

FACTUAL AND PROCEDURAL HISTORY

On January 8, 2022, around 3:00 p.m., C.L. was waiting to turn left at an intersection in Corona and noticed a car traveling in the opposite direction at a normal rate of speed and in the right-hand lane.  The car, driven by Colon, drifted into the right curb.  From C.L.'s vantage point, it appeared the car's right front tire caught on the curb.  After hitting the curb, the car pivoted "violently" to the left and crashed in a spinning motion, shearing off the top of a fire hydrant and hitting a light pole.

C.L. and another driver stopped to render aid.  Colon got out of the car and appeared to be in shock.  A.M., the passenger in Colon's car, was injured and unable to

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

2

get out. Colon, who did not have any visible injuries, walked to the curb, sat down, and put his head in his hands. He appeared upset and said he did not know what happened.

The fire department and police units arrived at the accident scene. There was severe damage to the passenger's side of Colon's car, and the fire department had to use the jaws of life to extract A.M. from the car. A.M. was transported to the hospital. The fire department medically assessed Colon and suggested he go to the hospital to be checked for injuries, but he declined medical treatment.

Corporal Michael Brunn watched Colon while Colon talked to members of the fire department, and Brunn noticed Colon's short-term memory and ability to concentrate were "extremely impaired." Colon admitted he was driving the car, but he did not remember what happened. Colon told Brunn he had smoked marijuana three hours prior to the accident and he smokes marijuana daily. When speaking to Colon, Officer James Albornoz noticed Colon had slurred speech, an unsteady gait, as well as bloodshot and watery eyes. Colon told Albornoz he hit his chin in the accident, but Colon had no visible injuries.

Brunn performed standardized field sobriety tests on Colon. There was no evidence of horizontal or vertical gaze nystagmus in Colon's eyes. But there was a very pronounced lack of convergence, which was consistent with being under the influence of marijuana. Colon did well on the Romberg balance test. However, his performance on the one-leg stand and walk-and-turn tests indicated his physical and mental abilities were impaired. Based on Colon's performance on the field sobriety tests and the symptoms of marijuana intoxication he exhibited, Brunn concluded Colon's ability to drive was impaired due to marijuana intoxication and his impairment was a contributing factor to the collision.

Brunn arrested Colon for driving under the influence. In a search of Colon's car, police found two bags of marijuana and various vape pens and cartridges.[2] Albornoz took Colon to the hospital, where a blood draw was performed.

The district attorney charged Colon with driving under the influence of a drug and causing bodily injury to A.M. (Veh. Code, § 23153, subd. (f)) and alleged Colon personally inflicted great bodily injury upon A.M. in the commission of the offense (Pen. Code, §§ 12022.7, subd. (a), 1192.7, subd. (c)(8)). The information also alleged Colon suffered a prior conviction in 2019 for driving under the influence of a drug (Veh. Code, § 23152, subd. (f)) and was convicted in 2020 of assault with a firearm (Pen. Code, § 245, subd. (a)(2)), which is a strike under the Three Strikes law (§§ 667, subd. (c)(2), 1170.12, subd. (a)(2)).

Before the jury was empaneled, Colon admitted the alleged prior convictions. The jury heard the evidence concerning the single-car accident, Colon's symptoms of marijuana intoxication, and his performance on the field sobriety tests. Albornoz also testified he smelled the odor of marijuana on Colon when he spoke to him after the accident. However, Albornoz had not put this information in his report and did not mention it at the preliminary hearing.

A.M. testified at trial. He had known Colon for several years and they were good friends. As a result of the accident, A.M. was in a coma and suffered a fractured spine. Initially upon awaking from his coma, A.M. was unable to walk; after three months, he returned to walking normally. A.M. did not remember much from the month of the accident. He did recall that on the day of the accident, he and Colon left work to go get lunch. Colon drove. There was preexisting damage to Colon's car, and it looked

---

[2] The court gave a limiting instruction that told the jury it was to consider this evidence only for the purpose of determining whether Colon was under the influence of marijuana such that it impaired his ability to safely operate a motor vehicle and not for any other purpose.

"messed up." Upon picking up lunch, they sat in the car and ate. After eating, they smoked about a gram of marijuana. They were headed back to work when the accident occurred.

The prosecution also presented the expert testimony of forensic toxicologist Kristen Steward from Bio-Tox Laboratories, which tested the sample of Colon's blood. The test Steward performed looks at three different components found within marijuana. The first component is delta-9-THC, which is the major psychoactive component in marijuana and can cause mental impairment. The second component is 11-hydroxy-delta-9-THC, which is the main metabolite or breakdown product and is equally capable of causing a mental change. This component dissipates below the lab's cutoff of one nanogram per milliliter within 24 hours. The third component is 11-carboxy-delta-9-THC, an inactive component that does not have any impairment abilities.

All three components were seen in the test on Colon's blood sample. The amount of delta-9-THC in Colon's blood indicated he had recently used marijuana. It did not necessarily reflect the marijuana had a psychoactive effect on Colon, but the result indicated it had the ability to do so. The amount of 11-hydroxy-delta-9-THC in Colon's blood indicated he had used marijuana within 24 hours and there was the possibility of mental impairment. Steward admitted she would not be able to tell what Colon's delta-9-THC was at the time of the accident because the peak level concentration of THC depends on the potency or purity of the marijuana.

Steward testified the results of Colon's blood test by themselves did not provide enough information for her to opine whether he was impaired while driving. She explained marijuana does not have a recognized concentration, like alcohol, where every person is impaired. The presence of marijuana in a person's system does not mean the person is feeling the drug's effects. Instead, the presence of marijuana in a person's system is only one factor to consider. To provide an opinion as to whether a person was impaired or driving under the influence, Steward considers the individual's driving

5

pattern, symptoms, performance on the field sobriety tests, and the toxicology (i.e., whether the drug was present in the individual's system) and considers whether the driving patterns, symptoms, and field sobriety tests are consistent with the drug found in the toxicology result. After the prosecutor provided a hypothetical based on the testimony at trial concerning the accident, the car's contents, Colon's symptoms of intoxication, his performance on the field sobriety tests, and toxicology, Steward opined the "individual was impaired for the purpose of driving." She explained the presence of THC above the lab's cutoff and the fact the hypothetical individual was showing signs and symptoms of intoxication indicates the person recently used, and the person's driving and performance on the field sobriety tests indicates the person was impaired.

Steward testified marijuana levels in a person's blood system do not correlate to impairment. She reiterated the presence or amount of THC in a person's blood alone cannot determine impairment. But she explained any concentration of THC can potentially impair someone.

The defense called Colon's older brother, G.C., as a witness. Prior to the accident, the passenger side of Colon's car was severely damaged in a crash. The car's passenger side window did not go up and Colon used a blanket in the window. The car looked "pretty messed up," but G.C. was unaware of any mechanical problems with the car.

The jury convicted Colon of the single charge and found true the great bodily injury enhancement. The court imposed a total prison sentence of seven years.

DISCUSSION

I.

ADMISSION OF EXPERT OPINION TESTIMONY

Colon contends the court prejudicially erred by allowing the prosecution's toxicology expert, Steward, to opine he was impaired by marijuana at the time of the

6

crash because the prosecution did not show the expert's methodology was accepted or reliable for assessing marijuana impairment. We conclude the court properly admitted the expert's testimony.

*A. Background*

Prior to trial, the defense moved to exclude evidence of the specific levels of THC in Colon's blood. In the motion, the defense argued "the predicted testimony of the criminalist that the marijuana/THC in Mr. Colon's blood caused his driving to be impaired should be barred" because the scientific community is not in agreement on whether "marijuana/THC actually effects a person's ability to drive." The defense asserted the prosecution should be required to prove at an Evidence Code section 402 hearing that the criminalist was qualified to testify as an expert on THC levels and how THC causes driving to be impaired. In arguing the motion before the court, defense counsel asserted there is currently "no consensus as to what levels of THC in a person's blood will cause impairment or even being under the influence" and given this lack of consensus, the THC levels in Colon's blood are irrelevant as to the issue of whether he was impaired.

The court held an Evidence Code section 402 hearing on the matter, at which Steward testified regarding her professional background and training, how Bio-Tox Laboratories tests for marijuana in a blood sample, the three components of marijuana they look for, and what information can be gleaned from their test results. She explained any concentration of the first two components they test for (delta-9-THC and 11-hydroxy-delta-9-THC) above the lab's limit of quantitation is significant information she would use in formulating her opinion the drug is present in the person's system and relevant to the issue of potential cognitive impairment. Steward acknowledged that studies looking at the correlation between THC levels and impairment have not found a correlation to a certain concentration like there is with alcohol. She testified the

7

concentration found in Colon's blood sample indicated recent usage, meaning usage within several hours, but she was not able to provide a specific time frame.

The defense argued the evidence of the THC levels in Colon's system was irrelevant because Steward acknowledged the levels do not correlate to impairment and while they indicated recent usage, Colon admitted recent usage to the officers. The defense also argued the evidence was unduly prejudicial because the jury may place improper weight on the evidence of the THC levels in Colon's system without understanding the relevance of this evidence. The court denied the motion, finding the testimony was relevant and exclusion was not warranted under Evidence Code section 352.

At trial, Steward opined a hypothetical driver with Colon's blood test results, driving pattern, intoxication symptoms, and performance on field sobriety tests would have been impaired for the purpose of driving.

### B. Standard of Review and Governing Legal Principles

"'The trial court has broad discretion in deciding whether to admit or exclude expert testimony . . . and its decision as to whether expert testimony meets the standard for admissibility is subject to review for abuse of discretion.'" (*People v. Duong* (2020) 10 Cal.5th 36, 60.) Expert opinion testimony """"will be excluded only when it would add *nothing at all* to the jury's common fund of information, i.e., when "the subject of inquiry is one of such common knowledge that men [and women] of ordinary education could reach a conclusion as intelligently as the witness."""" (*People v. Edwards* (2013) 57 Cal.4th 658, 756.)

Evidence Code section 720, subdivision (a) provides: "A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates." Expert opinion testimony is generally limited to subjects "sufficiently beyond

8

common experience that the opinion of an expert would assist the trier of fact." (Evid. Code, § 801, subd. (a).)

"Trial judges have a critical gatekeeping function when it comes to expert testimony beyond merely determining whether the expert may testify at all." (*People v. Azcona* (2020) 58 Cal.App.5th 504, 513 (*Azcona*).) Evidence Code section 801, subdivision (b) requires the expert's opinion testimony be based on matter "that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject . . . ." An expert witness offering an opinion may state the reasons for the opinion and the matter upon which it is based. (Evid. Code, § 802.) "Testimony in the form of an opinion that is otherwise admissible is not objectionable because it embraces the ultimate issue to be decided by the trier of fact." (Evid. Code, § 805.)

*C. The Trial Court Did Not Abuse its Discretion by Admitting the Expert Testimony*

Colon's appellate contention is more nuanced than the issue he raised in the trial court. On appeal, he does not challenge the admission of Steward's expert testimony concerning his blood test results or that the THC levels in his blood indicated recent use. Instead, he asserts the court abused its discretion by allowing Steward to give her opinion concerning his impairment at the time of the crash "because there was no showing by the prosecution that the methodology [the expert] used—combining blood test results with second-hand hypothetical descriptions of a driver's conduct on the road and performance in field sobriety tests—is an accepted or reliable one for assessing marijuana impairment." Colon focuses on Steward's testimony that in forming her opinion, she considers driving patterns, symptoms of intoxication, field sobriety tests, and toxicology. He argues the court abused its discretion by admitting Steward's expert opinion testimony because there was no "evidence to support the reliability or acceptance" of her methodology and "no explanation of how each factor" was weighed in the analysis. He asserts "Steward's method for forming an opinion had no apparent protocol, and no

9

evidence that it has gained acceptance or is capable of producing reliable results was provided."

But Colon did not raise this objection below and has therefore forfeited it on appeal. (Evid. Code, § 353; *People v. Farnam* (2002) 28 Cal.4th 107, 159.) Even if Colon's appellate claim was properly preserved, it is without merit. The issues Colon raises concerning Steward's methodology and its acceptance are relevant to the weight of her expert opinion, not to its admissibility, and could be raised on cross-examination. As our Supreme Court has explained, a defendant is "'entitled to attack [the expert's] credibility regarding the claimed basis of [her] opinion, but questions regarding the validity or credibility of an expert's knowledge go to the weight of such testimony, not its admissibility.'" (*People v. Rodriguez* (2014) 58 Cal.4th 587, 638.) Colon was entitled to attack Steward's expert opinion testimony regarding the methodology she used and its acceptance. He did not. In cross-examining Steward during the Evidence Code section 402 hearing and before the jury, defense counsel did not ask Steward whether her methodology had "gained acceptance or [was] capable of producing reliable results."

Colon's reliance on *Azcona, supra*, 58 Cal.App.5th 504 to support his argument is misplaced as the situation in that case is readily distinguishable. In *Azcona*, a firearms expert testified the marks on the projectiles in different shootings matched and indicated the projectiles came from the same gun, "'to the practical exclusion of all other guns.'" (*Id.* at pp. 513–514.) The Court of Appeal concluded the "trial court abused its discretion by failing to limit the expert's opinion to what was actually supported by the material the expert relied on." (*Id.* at p. 514.) The appellate court explained: "A trial court's duty to keep unfounded opinions from the jury is particularly important in a situation like the one presented here, where significant criticism of the expert's methodology was presented (even if it was not shown to have been rejected by a clear majority of the scientific community). The existence of such criticism should prompt a trial court to carefully determine what conclusions can reliably be drawn from the

10

methodology in question.  But . . . the trial court abandoned its gatekeeping role, allowing unfettered expert testimony that went far beyond what the underlying material supported."  (*Ibid.*)

Here, there was no evidence Steward's "methodology" of considering the totality of the circumstances had been criticized.  Based on the evidence and argument before it, the trial court properly evaluated the admissibility of the expert's opinion testimony.  Accordingly, we reject Colon's claim the court abused its discretion by admitting this evidence.

## II.

### INSTRUCTION ON GREAT BODILY INJURY ENHANCEMENT

Section 12022.7, subdivision (a) provides:  "Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony . . . shall be punished by an additional and consecutive term of imprisonment in the state prison for three years."  When instructing the jury on the great bodily injury enhancement under section 12022.7, subdivision (a), the court omitted the element the prosecution must prove A.M. was not an accomplice to the offense.  Colon contends the court's omission of this element and the court's failure to instruct on general principles of accomplice liability (CALCRIM Nos. 400–403) necessitate the reversal of the great bodily injury enhancement.  We disagree.

### A.  Background

The information alleged Colon, in the commission of the driving under the influence offense, personally inflicted great bodily injury upon A.M., who was not an

11

accomplice to the offense, within the meaning of sections 12022.7, subdivision (a) and 1192.7, subdivision (c)(8).[3]

During discussions on the proposed jury instructions, the court indicated the prosecution had requested the court give CALCRIM No. 3160 for the great bodily injury enhancement. The defense did not object to the proposed language in the instruction nor request additional instructions on accomplice liability.

As given to the jury, CALCRIM No. 3160 provided: "If you find the defendant guilty of the crime[ ] charged in Count[ ] 1, you must then decide whether, for each crime, the People have proved the additional allegation that the defendant personally inflicted great bodily injury on [A.M.] in the commission of that crime. You must decide whether the People have proved this allegation for each crime and return a separate finding for each crime. [¶] *Great bodily injury* means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm. [¶] The People have the burden of proving each allegation beyond a reasonable doubt. If the People have not met this burden, you must find that the allegation has not been proved."

The court did not instruct the jury the prosecution must also prove A.M. was not an accomplice to the crime, an option contained within brackets in CALCRIM No. 3160, the pattern jury instruction for the great bodily injury enhancement under section 12022.7.[4] In brackets, CALCRIM No. 3160 also offers the option of instructing on the definition of an accomplice: "A person is an *accomplice* if he or she is subject to prosecution for the identical crime charged against the defendant. Someone is subject to

---

[3] Under section 1192.7, subdivision (c)(8), a "'serious felony'" is "any felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice."

[4] Bracketed portions of a jury instruction "provide optional choices that may be necessary or appropriate, depending on the individual circumstances of the case." (Judicial Council of Cal., Crim. Jury Instns. (2023) p. xxii.)

12

prosecution if he or she personally committed the crime or if: [¶] 1. He or she knew of the criminal purpose of the person who committed the crime; [¶] AND [¶] 2. He or she intended to, and did in fact, (aid, facilitate, promote, encourage, or instigate the commission of the crime/ [or] participate in a criminal conspiracy to commit the crime)."

The verdict form returned by the jury on the great bodily injury enhancement stated it found Colon "**did** personally inflict great bodily injury upon the person of [A.M.], not an accomplice to the offense, within the meaning of Penal Code sections 12022.7, subdivision (a) and 1192.7, subdivision (c)[(8)] . . . ."

### B. Applicable Law and Analysis

"'The trial court has a sua sponte duty to give correct instructions on the basic principles of the law applicable to the case that are necessary to the jury's understanding of the case,' including the elements of a charged enhancement." (*People v. Camino* (2010) 188 Cal.App.4th 1359, 1380; accord, *People v. Enraca* (2012) 53 Cal.4th 735, 759 ["In criminal cases, even in the absence of a request, a trial court must instruct on general principles of law relevant to the issues raised by the evidence and necessary for the jury's understanding of the case"].) We review a claim of instructional error de novo. (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.)

Colon contends the court's instruction on the great bodily injury enhancement was incomplete because it omitted the element the prosecution must prove A.M. was not an accomplice to the crime and the error was prejudicial. Assuming, without deciding, the court committed instructional error by omitting the non-accomplice element, we conclude the error was harmless beyond a reasonable doubt.

"[A] trial court's failure to instruct the jury on an element of a sentence enhancement provision (other than one based on a prior conviction), is federal constitutional error if the provision 'increases the penalty for [the underlying] crime beyond the prescribed statutory maximum.' [Citation.] Such error is reversible under

13

*Chapman* [*v. California* (1967)] 386 U.S. [18] at page 24, unless it can be shown 'beyond a reasonable doubt' that the error did not contribute to the jury's verdict." (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 326; see also *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490.)

When a trial court omits an element of a sentence enhancement provision, a reviewing court "'conduct[s] a thorough examination of the record. If, at the end of that examination, the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error—for example, where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding—it should not find the error harmless.' [Citation.] On the other hand, instructional error is harmless 'where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence.' [Citations.] Our task, then, is to determine 'whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element.'" (*People v. Mil* (2012) 53 Cal.4th 400, 417, quoting *Neder v. United States* (1999) 527 U.S. 1.)

"Section 1111 defines an accomplice as a person 'who is liable to prosecution for the identical offense charged against the defendant on trial . . . .'" (*People v. Stankewitz* (1990) 51 Cal.3d 72, 90, abrogated on another ground in *People v. Diaz* (2015) 60 Cal.4th 1176, 1190.) "[A]n accomplice is one who aids or promotes the perpetrator's crime with knowledge of the perpetrator's unlawful purpose *and* an intent to assist in the commission of the target crime . . . ." (*People v. Williams* (2008) 43 Cal.4th 584, 637.) An individual's presence at the scene of a crime or failure to prevent its commission is not sufficient to establish aiding and abetting. (*People v. Stankewitz, supra*, 51 Cal.3d at p. 90.)

The issue is whether A.M. was an accomplice to Colon's offense of driving under the influence of a drug and causing injury. The jury was instructed on the elements of causing injury to another while driving a vehicle under the influence of a drug (Veh.

14

Code, § 23153, subd. (f)): "1. The defendant drove a vehicle; [¶] 2. When he drove a vehicle, the defendant was under the influence of a drug[;] [¶] 3. While driving a vehicle under the influence, the defendant also committed an illegal act; [¶] AND [¶] 4. The defendant's illegal act caused bodily injury to another person." (CALCRIM No. 2100.) To be an accomplice, A.M. must have known Colon's criminal purpose and with the intent to do so, encouraged, promoted, aided, or facilitated Colon's commission of the offense of operating a vehicle under the influence and causing injury. Given the evidence in this case, no reasonable juror could have concluded A.M. was an accomplice to the charged offense.

Colon admits A.M. did not drive the car and there was no evidence A.M. encouraged or assisted the accident itself. Nevertheless, he contends there was evidence from which a reasonable juror could have concluded A.M. was an accomplice to his impaired driving because A.M. admitted to smoking marijuana with him prior to the crash. A.M.'s act of smoking marijuana with Colon, his presence in Colon's car, and his failure to prevent Colon from driving does not make A.M. an accomplice to Colon's offense of causing injury while driving under the influence of a drug. (See *People v. Stankewitz, supra*, 51 Cal.3d at p. 90.) A.M. was not liable for the same criminal charge as Colon as there was no evidence A.M. drove the car under the influence. Nor was there evidence A.M. knew Colon's mental or physical abilities were so impaired that he was no longer able to drive the car with the caution of a sober person, using ordinary care, or that A.M. encouraged or facilitated Colon's driving while under the influence.

To support his contention the court's failure to instruct "on the not-an-accomplice element of the enhancement" was prejudicial error, Colon relies on *People v. Verlinde* (2002) 100 Cal.App.4th 1146 (*Verlinde*), disapproved on other grounds in *People v. Cook* (2015) 60 Cal.4th 922 at page 939. But as he acknowledges, *Verlinde* is distinguishable. *Verlinde* presented "an unusual factual situation with shared driving by two intoxicated individuals." (*Id.* at p. 1160.) In *Verlinde*, near the beginning of the

15

drive, the defendant operated the car's stick shift and pedals while another person, Vessells, controlled the steering wheel. After Vessells indicated he was unable to continue driving, the defendant took over the steering wheel as well. (*Id.* at p. 1155.) A witness saw the defendant steering the vehicle shortly before it crashed. (*Id.* at p. 1156.) One passenger of the defendant's vehicle died, while Vessells and another passenger suffered serious injuries. (*Ibid.*) The defendant was tried on charges of gross vehicular manslaughter while intoxicated and driving under the influence and causing injury, among other charges, with enhancements for personal infliction of great bodily injury on two victims, within the meaning of section 12022.7, subdivision (a). (*Verlinde,* at p. 1154.)

On appeal, the defendant in *Verlinde* argued Vessells was an accomplice as a matter of law and therefore the trial court erred by failing to instruct the jury that injury to an accomplice could not support the great bodily injury enhancement and by failing to give certain instructions concerning accomplice testimony (CALCRIM Nos. 334–335). (*Verlinde, supra*, 100 Cal.App.4th at pp. 1157–1158, 1167.) The Court of Appeal found the evidence presented a factual question for the jury whether Vessells was an accomplice as to the charges of gross vehicular manslaughter while intoxicated and/or felony drunk driving. (*Id.* at p. 1160.) The appellate court therefore found the trial court erred by not instructing the jury to determine the question of Vessells's status as an accomplice and by not instructing the jury on accomplice testimony. (*Id.* at pp. 1162–1163.)

In *Verlinde*, the Court of Appeal also vacated the great bodily injury enhancement imposed for the injuries Vessells sustained because the trial court failed to instruct the jury on the not-an-accomplice element of the enhancement. (*Verlinde, supra*, 100 Cal.App.4th at pp. 1167–1168.) The appellate court explained: "If Vessells is an accomplice, the enhancement, by its own terms, cannot be imposed for injuries inflicted upon him. Simply put, an element of the enhancement would not be satisfied. Under these circumstances, where the jury did not properly have the opportunity to resolve a

16

factual issue that could have made the enhancement inapplicable by its own terms, imposition of the enhancement cannot stand." (*Id.* at p. 1168.)

The evidence in Colon's case is nothing like the "unusual factual situation" in *Verlinde*. (*Verlinde, supra*, 100 Cal.App.4th at p. 1160.) There was no evidence A.M. jointly drove the car with Colon at any point before or during the collision. Nor was there evidence A.M. encouraged Colon to drive while under the influence. As there was no evidence A.M. was an accomplice to Colon's offense, the alleged instructional error was harmless beyond a reasonable doubt.

III.

SENTENCING ISSUES

Colon raises two sentencing issues. First, he contends the court abused its discretion by imposing the midterm sentence because there were mitigating circumstances warranting a low term sentence under section 1170, subdivision (b)(6). Second, he asserts the court erred by imposing two sentencing enhancements because it was required to strike one under section 1385, subdivision (c)(2)(B). We reject both arguments.

*A. Section 1170*

On January 1, 2022, 10 months prior to Colon's sentencing, several amendments to section 1170 went into effect. (Sen. Bill No. 567 (2021-2022); Stats. 2021, ch. 731, § 1.3.) One change was the addition of subdivision (b)(6) to the statute. While the midterm is the presumptive term of imprisonment (§ 1170, subd. (b)(1)), subdivision (b)(6) provides: "[U]nless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense:" (1) the

17

offender "has experienced psychological, physical, or childhood trauma, including . . . abuse, neglect, exploitation," or (2) the offender was under the age of 26 when the offense was committed.

In Colon's sentencing motion and at the sentencing hearing, defense counsel argued the court should consider Colon's youth and abuse he suffered as a youth when the court made its sentencing decisions. Defense counsel, however, did not reference section 1170, subdivision (b)(6) or clearly argue Colon's age and past trauma were contributing factors in the commission of the offense that required imposition of the lower term. Instead, defense counsel emphasized Colon's age and past trauma in arguing the court should exercise its discretion to dismiss the prior strike conviction for purposes of sentencing (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*)) and grant probation to Colon.

Colon recognizes his trial counsel did not refer to section 1170, subdivision (b)(6) or the applicable legal standard, but he asserts a sufficient showing was made nonetheless to require the court to impose a low term sentence because his sentencing materials repeatedly referenced his youth and past trauma as mitigating factors. Alternatively, he asserts if his trial counsel did not make an adequate showing, his counsel failed to provide constitutionally required effective assistance.

"We review a trial court's sentencing decisions for an abuse of discretion, evaluating whether the court exercised its discretion 'in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an "individualized consideration of the offense, the offender, and the public interest."' [Citation.] . . . 'A failure to exercise discretion may also constitute an abuse of discretion.' [Citation.] '"A court which is unaware of the scope of its discretionary powers can no more exercise that 'informed discretion' than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record."'" (*People v. Panozo* (2021) 59 Cal.App.5th 825, 837.)

18

Colon contends his sentence must be vacated and the matter remanded because the court abused its discretion by imposing the midterm or because the record is ambiguous as to whether the court was aware of the presumption in section 1170, subdivision (b)(6) for the low term sentence. When selecting and imposing the midterm sentence, the court did not make an explicit finding "that the aggravating circumstances outweigh the mitigating circumstances [such] that imposition of the lower term would be contrary to the interests of justice." (*Ibid*.) Assuming, without deciding, there was error, we conclude the error was harmless.

Where a court is unaware of the scope of its discretionary powers, "the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.'" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.) Here, assuming the court was unaware of the scope of its discretionary powers based on section 1170, subdivision (b)(6), the record "'clearly indicate[s]'" the court would have imposed the same midterm sentence. (*Gutierrez*, at p. 1391.) Here, in considering Colon's *Romero* motion, the court reviewed Colon's criminal history, which began as a juvenile, in detail. The court indicated there was a "history of criminal conduct that is continued, a continued pattern where there's a violation of probation, he goes back, there's another offense within a very short period of time." In sentencing Colon, the court considered several aggravating factors identified by the probation report, including that Colon's prior convictions are numerous and increasing in seriousness, he served a prior prison term, he was on parole when the crime was committed, and his performance on probation or parole was unsatisfactory. (Cal. Rules of Court, rule 4.421(b)(2)–(b)(5).) The court indicated it "was tempted to join the People's position in selecting the upper term, but the Court, considering [Colon's] relative youth, [was] going to select the midterm." Based on the record before us, we conclude remand for resentencing is unnecessary and would be an idle act. (See *People v. Flowers* (2022) 81 Cal.App.5th 680, 685–686 [concluding

19

remand unnecessary after amendment to § 1170 because record "'clearly indicate[s]'" court would not have imposed a more favorable sentence upon remand], review granted Oct. 12, 2022, S276237.)

*B. Section 1385*

Colon contends the court erred under section 1385, subdivision (c) by imposing two sentencing enhancements:  (1) a Three Strikes sentence on the substantive offense, and (2) the great bodily injury enhancement.  We reject his claim because the court imposed only a single enhancement for great bodily injury.  The court doubled the sentence for the substantive offense under the Three Strikes law, which is not an enhancement but an alternate sentencing scheme.  (*People v. Burke* (2023) 89 Cal.App.5th 237, 243.)

"Effective January 1, 2022, Senate Bill No. 81 (Stats. 2021, ch. 721, § 1) amended section 1385 to add specific mitigating factors the trial court must consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice.  [Citations.]  Section 1385, subdivision (c) now provides: '(1) Notwithstanding any other law, the court shall dismiss an *enhancement* if it is in the furtherance of justice to do so, except if dismissal of that *enhancement* is prohibited by any initiative statute. [¶] (2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the [enumerated] mitigating circumstances . . . are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety.'" (*People v. Burke, supra*, 89 Cal.App.5th at pp. 242–243.)  At issue here is the circumstance concerning multiple enhancements alleged in a single case.  Section 1385, subdivision (c)(2)(B) indicates when multiple enhancements are alleged in a single case, "all enhancements beyond a single enhancement shall be dismissed."

California's Courts of Appeal have "rejected the argument that the 'Three Strikes' law constitutes an enhancement under section 1385[, subdivision] (c), concluding it is 'well established' that the law is instead 'an alternative sentencing scheme for the current offense.'" (*People v. Serrano* (2024) 100 Cal.App.5th 1324, 1338; accord, *People v. Dain* (2024) 99 Cal.App.5th 399, 410 [holding § 1385, subd. (c) "applies only when a trial court is considering whether to dismiss 'an enhancement,' and a sentence under the Three Strikes law is not an enhancement"]; *People v. Olay* (2023) 98 Cal.App.5th 60, 64–69 [holding § 1385, subd. (c) does not apply to the Three Strikes law]; *People v. Burke, supra*, 89 Cal.App.5th at pp. 242–244 [§ 1385, subd. (c) "applies only to an 'enhancement,' and the Three Strikes law is not an enhancement" (*id*. at p. 244)]; see also *People v. McDowell* (2024) 99 Cal.App.5th 1147, 1152, 1154–1156 [Senate Bill No. 81 does not apply to elevated penalty provision in § 236.1, subd. (c)(2), which prescribes an alternate punishment for the offense].)

Colon urges this court to reach a conclusion contrary to these holdings. We decline his invitation. We find the reasoning of these cases persuasive and agree section 1385, subdivision (c) does not apply to prior strike convictions under the Three Strikes law because the Three Strikes law is an alternate sentencing scheme and not an enhancement as the term has been judicially defined. (*People v. Dain, supra*, 99 Cal.App.5th at pp. 410–411; *People v. Burke, supra*, 89 Cal.App.5th at p. 243; see *People v. Jones* (2009) 47 Cal.4th 566, 577 ["'Unlike an enhancement, which provides for an *additional term* of imprisonment, [a penalty provision] sets forth an alternate penalty *for the underlying felony itself*'"].)

DISPOSITION

The judgment is affirmed.


MOTOIKE, J.

WE CONCUR:


GOETHALS, ACTING P. J.


SANCHEZ, J.